Samuel ISRAEL and Samis Land Company, a Washington Corporation, Plaintiffs-Appellants,

v.

Rogers MORTON, as Secretary of the Interior, et al., Defendants-Appellees.

No. 73–3181.

United States Court of Appeals, Ninth Circuit.

Jan. 19, 1977.

Thomas W. Huber (argued), of Helsell, Paul, Fetterman, Todd & Hokanson, Seattle, Wash., for plaintiffs-appellants.

Robert M. Sweeney, Asst. U.S. Atty., Spokane, Wash., for defendants-appellees.

## OPINION

Before MERRILL and KENNEDY, Circuit Judges, and ENRIGHT,* District Judge.

MERRILL, Circuit Judge:

Appellants are owners of land located within the boundaries of the Columbia Basin Project, a federal reclamation project located in the State of Washington, utilizing water from the Grand Coulee Dam. They have brought this action seeking a judicial declaration of their right to sell land in excess of a holding of 160 acres without restriction on sale price, and the right of the land, once so sold, to receive irrigation water from the project. The case involves interpretation of the laws governing the Columbia Basin Project and of contracts with the United States specifying the terms on which the cost of the project is to be repaid to the United States and on which the lands within the project may secure project water.

The district court ruled that in absence of approval by the Secretary of the Interior appellants do not have the right to sell the lands involved at a price in excess of the value at which the lands had been appraised by the Secretary, and that if the lands are sold without such approval, and at a price in excess of the appraised value, the lands in the hands of the new owners would not be entitled to receive irrigation water from the project.

Appellants contend that construing the applicable statutes and contracts to this effect under the facts of this case would constitute a deprivation of property without due process by nullifying vested rights to project water. We reject this contention and affirm the judgment of the district court.

The Federal Reclamation Laws have long restricted the rights of owners of land in excess of 160 acres to receive water developed by a federal reclamation project. As this court stated in *United States v. Tulare Lake Canal Co.*, 535 F.2d 1093, 1094 (9th Cir. 1976):

"The requirement that the owner of private land within a reclamation project agree to dispose of any excess over 160 acres at ex-project prices was intended to serve much the same purposes as the historic restriction on the amount of public land an entryman may obtain from the United States under the homestead acts, the original reclamation act, and other public land laws. * * * [T]hese purposes are to open private land to settlement by farmers of modest means, to insure wide distribution of the benefits of the federal investment in the reclamation project, and to prevent private landowners from realizing a disproportionate windfall advantage from enhanced productivity and land values because of the project."

This principle is echoed in legislation establishing particular projects, although,

---

* Honorable William B. Enright, United States District Judge for the Southern District of California, sitting by designation.

as we shall see, the nature of the restriction made to apply to the particular project may depart in some respects from that generally provided by the reclamation laws.

The Columbia Basin Project Act, ch. 269, §§ 1 et seq., 50 Stat. 208, 16 U.S.C. §§ 835 et seq. (1937) ("Project Act"), established a federal reclamation project in conjunction with Grand Coulee Dam.[1] As amended by the Act of March 10, 1943, ch. 14, §§ 1 et seq., 57 Stat. 14, it provided that lands within the project boundaries be developed in irrigation blocks, and that lands within each block be segregated into farm units not exceeding 160 acres in size. All lands were to be appraised by the Secretary of the Interior "without reference to or increment on account of the construction of the project." Water was not to be delivered to more than one farm unit held by any one farm owner. Land in excess of one farm unit was called "excess land."

The Act provided that irrigation districts should be organized under state law to provide for the supplying of irrigation water from the project and to provide entities responsible for repayment to the United States of the cost of project construction. The Act required that contracts (known as "repayment contracts") be entered into between the United States and the irrigation districts to provide for repayment by members of the irrigation district of the cost of construction. The Act provided further that contracts (known as "recordable contracts") be entered into between the United States and the owners of land within the project as a condition of the right of any land to receive water from the project. Section 2(c) of the Act stated:

"Each such recordable contract shall provide:

\* \* \* \* \* \*

That in the period from the date of execution thereof to a date five years from the time water becomes available for the lands covered thereby, no conveyance of or contract to convey a freehold estate in such lands, whether excess or nonexcess lands, shall be made for a consideration exceeding its appraised value.

\* \* \* \* \* \*

That in the event that within such period such a conveyance of, or contract to convey, is made \* \* \* for a consideration in excess of the appraised value, the Secretary, at any time within two years \* \* \* may cancel the right of such estate to receive water from, through, or by means of the project works \* \* \*."

16 U.S.C. § 835.

Pursuant to statute the Quincy-Columbia Basin Irrigation District was organized on October 9, 1945, and entered into a repayment contract with the United States. Article 29(b) of that contract provided that:

"Water shall not be delivered from, through or by means of the irrigation system \* \* \* (2) to or for more than one farm unit in the ownership of any one land owner \* \* \*. (4) to or for lands not covered by a recordable contract. \* \* \* (5) to or for lands as to which the right to receive water has been cancelled by the Secretary under the provisions of the law."

On October 16, 1945, the United States entered into its first recordable contract on the project with Charles A. Kennedy and his wife. This contract became known as the "Long Form Recordable Contract." Contracts with other landowners were "short form" contracts, incorporating portions of the long form contract by reference.

Appellant Israel owns both excess and nonexcess land within the project. He has executed a recordable contract as to his nonexcess land and receives water on that farm unit. His rights with reference to that nonexcess land are not in issue here.

---

1. For a general background regarding the relationship of laws governing the Columbia Basin Project and other federal reclamation laws *see* Sax, *Selling Reclamation Water Rights: A Case* *Study in Federal Subsidy Policy,* 64 Mich.L. Rev. 13, 29–30 (1965); H. Hogan, *Acreage Limitation in the Federal Reclamation Program* 201–202 (1972).

Israel's excess land was acquired February 16, 1961, from a landowner who had theretofore entered into a recordable contract. The land is designated as "Farm Unit 84, Irrigation Block 78," and is here referred to as "FU84." The land was initially appraised by the Secretary at $2,000, and at the time of suit the appraisal had been increased to $6,900. The actual market value at the time of the suit was $24,040.

In dispute here are the rights respecting this excess land. Since, in Israel's hands it is excess land, it is not, under the Project Act, entitled to project water and has never received any. Israel wishes to be free to sell it at its market value. He wishes assurance that the land would carry the right to receive project water if sold to one not already in ownership of a farm, as to whom the land would be nonexcess. The Secretary refuses to approve any sale at a price exceeding $6,900 and states that if sold at a price exceeding that figure the land in the hands of its new owner would not have the right to receive irrigation water from the project.

The long form recordable contract, as adopted by the contract applicable to FU84, provides in its paragraph 10(a):

"In the period from the date of execution hereof and to a date five (5) years from the time that the Secretary gives public notice that water is available to an irrigation block within which is located that part of the subject lands involved in any given transaction * * *:

(i) The Landowner in such transaction shall make no conveyance of or contract to convey a freehold estate in the subject lands, for a consideration exceeding their appraised value.

*    *    *    *    *    *

(iii) In the event that within such period such a conveyance of, or contract to convey, is made * * * for a consideration in excess of the appraised value, the Secretary at any time within two (2) years of the day on which the contract or deed involved is filed for recording in the

official county records * * * may cancel the right of such estate to receive water from, through or by means of the project works by a written notice of cancellation * * *."

Water became available to FU84's irrigation block, with notice by the Secretary, on January 1, 1956. Thus, the five-year period during which a landowner within Irrigation Block 78 was prohibited from selling at a price exceeding the appraised value terminated December 31, 1960, and this contract restriction was no longer in effect after that date. It was not, then, in effect when the land was acquired by Israel in 1961, and he was, at the time of acquisition, entitled to sell it at any price he could obtain without need for the Secretary's approval, and, under the agreement then in effect, the land would be entitled to project water.

On October 1, 1962, an amendment to the Columbia Basin Project Act became effective. 76 Stat. 678. It provided that the project was to be governed by the Federal Reclamation Laws, "being the Act of June 17, 1902 (33 Stat. 388), and all acts amendatory thereof or supplemental thereto." As a consequence project lands became subject to the excess lands provisions of the Federal Reclamation Laws, specifically, § 46 of the Omnibus Adjustment Act of May 25, 1926, 43 U.S.C. § 423e, which provides in part:

"* * * that all irrigable land held in private ownership by any one owner in excess of one hundred and sixty irrigable acres shall be appraised in a manner to be prescribed by the Secretary of the Interior and the sale prices thereof fixed by the Secretary on the basis of its actual bona fide value at the date of appraisal without reference to the proposed construction of the irrigation works; and that no such excess lands so held shall receive water from any project or division if the owners thereof shall refuse to execute valid recordable contracts for the sale of such lands under terms and conditions satisfactory to the Secretary of the Interior and at prices not to exceed those fixed by the Secretary of the Interior;

and that until one-half the construction charges against said lands shall have been fully paid no sale of any such lands shall carry the right to receive water unless and until the purchase price involved in such sale is approved by the Secretary of the Interior. * * * "

The United States and Quincy-Columbia Basin Irrigation District, on October 2, 1962, entered into a new repayment contract, and on October 5, 1965, an amendatory repayment contract was executed, incorporating the change in statute noted above. (The contract was again amended on December 18, 1968, without significant change as to the restriction on right of land to project water following sale.)

The amendment made these changes in the rights of landowners to project water:

Under the Columbia Basin Project Act (prior to the 1962 amendment), restrictions on sale price applied to both excess and nonexcess lands. Recordable contracts agreeing to such restrictions were to be executed as to both excess and nonexcess lands. In absence of a recordable contract no land within the project was entitled to receive project water. Under the Reclamation Laws execution of a recordable contract was required only as to excess land. Nonexcess land could get water without execution of a recordable contract and without regard to sale price.

Under the Project Act excess land could not, under any circumstances, carry a right to project water. Under the Reclamation Laws it could if a recordable contract was executed.

Under the Project Act the terms of the recordable contract restricting the right of sold excess land to receive project water continued only for five years after water

became available. Under the Reclamation Laws the provisions remained applicable until one half of the construction costs chargeable against the sold land were paid.

Appellants contend that if § 46 of the Omnibus Adjustment Act of 1926 and the provisions of the amended repayment contract are applicable,[2] it would constitute a deprivation of property without due process. They assert that once five years had passed after water had become available, they, as owners, became vested with the unrestricted right to sell their excess lands. This would mean that the excess lands would be entitled to project water and could be sold at any price. Appellants conclude that to restrict their vested rights after expiration of the five-year period and to impose new restrictions on lands then free from restrictions amounts to a taking of property without due process.

We cannot agree. A distinction must be recognized between the nature of nonproject water, such as natural-flow water, and project water, and between the manner in which rights to use of such waters are obtained. Right to use of natural-flow water is obtained in accordance with state law. In most western states it is obtained by appropriation—putting the water to beneficial use upon lands. Once the rights are obtained they vest, until abandoned, as appurtenances of the land upon which the water has been put to use. Project water, on the other hand, would not exist but for the fact that it has been developed by the United States. It is not there for the taking (by the landowner subject to state law), but for the giving by the United States. The terms upon which it can be put to use, and the manner in which rights to continued use can be acquired, are

2. Appellants also contend that § 46 and the Repayment Contract of October 5, 1965, in their provisions that sale of lands without price approval will not carry a right to project water, must be construed not to apply to their lands. We reject their construction of the Act and contract as strained and irrational. Section 46 was derived from § 12 of the Reclamation Extension Act of August 13, 1914, ch. 247, 38

Stat. 686. On its face § 12 embodied antimonopoly and antispeculation principles which reached all excess lands of a single landowner. *Proposed Repayment Contracts—Kings and Kern River Projects,* M–36631, 68 I.D. 374, 390 (Opinion of Interior Solicitor Barry 1961); *see also United States v. Tulare Lake Canal Co., supra,* 535 F.2d at 1094–95.

for the United States to fix. If such rights are subject to becoming vested beyond the power of the United States to take without compensation, such vesting can only occur on terms fixed by the United States.[3]

Here, paragraph 11 of the original long form recordable contract adopted by the recordable contract executed with respect to FU84 provides:

"All rights of the landowner to receive water for the subject lands from, through or by means of the project works shall be subject to all the provisions of any contract between the United States and the Quincy-Columbia Basin Irrigation District, including the contract of October 9, 1945 entered into under the authority of the Act of August 30, 1935 (49 Stat. 1028, 1039), the Reclamation Project Act of 1939 (53 Stat. 1187), the Project and State Acts or any acts amendatory thereof or supplementary thereto."

■ The language "any contract * * * including the contract of October 9, 1945 entered into under the authority of [certain specified acts] or any acts amendatory thereof or supplementary thereto" cannot in our judgment reasonably be construed to mean only the contract of October 9, 1945. Rather, the effect of the quoted language is to subject the rights in question at least to the terms of future contracts between the irrigation district and the United States where such contracts are authorized by appropriate statutes. The fact that at the time of acquisition of FU84 by appellants no contract provisions would have precluded a new owner, as to whom the lands were nonexcess, from acquiring project water does not mean that a right to continuation of that status had become vested.

Judgment affirmed.

**3.** As one writer has put it:

"The fact of importance above all others in federal reclamation is that the landowner calls upon the government to provide him with water. It is for Congress representing the general interest, and not for the landowner, to say upon what terms, in what amount, and in accord with what policy the public will supply water. This is the first principle inherent in a relationship between the public that gives and an individual who receives. * * *"

Taylor, *The Excess Land Law: Execution of a Public Policy,* 64 Yale L.J. 477, 478 (1955); *see also Ivanhoe Irrigation Dist. v. McCracken,* 357 U.S. 275, 294–97, 78 S.Ct. 1174, 2 L.Ed.2d 1313 (1958).