Thomas **FLINT** and Roger Etter, on behalf of themselves and all others similarly situated, Plaintiffs–Appellants,

v.

**UNITED STATES** of America; Bureau of Reclamation; Manuel Lujan, Jr.,* in his capacity as Secretary of the Department of Interior; Dennis B. Underwood,** in his capacity as Commissioner of the Bureau of Reclamation of the United States; Quincy–Columbia Basin Irrigation District, a Washington irrigation district; South Columbia Basin Irrigation District, a Washington irrigation district; and East Columbia Basin; a Washington irrigation district, Defendants–Appellees.

No. 89–35110.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 6, 1990.

Decided June 27, 1990.

---

* Manuel Lujan, Jr. has been substituted for Donald P. Hodel pursuant to Fed.R.App.P. 43(c)(1).

** Dennis B. Underwood has been substituted for C. Dale Duvall pursuant to Fed.R.App.P. 43(c)(1).

Michael R. Tabler, Moses Lake, Wash., for plaintiffs-appellants.

Peter R. Steenland, Jr., U.S. Dept. of Justice, Washington, D.C., John W. Baird, and Richard A. Lemargie, Ephrata, Wash., for defendants-appellees.

Before WRIGHT, REINHARDT and O'SCANNLAIN, Circuit Judges.

EUGENE A. WRIGHT, Circuit Judge:

Landowners in eastern Washington brought a class action challenging charges assessed by the Secretary of the Interior for the use of artificially stored ground

water. We consider whether these charges under contracts executed pursuant to the Reclamation Project Act are subject to judicial review.

## FACTUAL BACKGROUND

In 1902, Congress passed legislation authorizing the creation and operation of facilities to provide water to land within federal irrigation projects. The Columbia Basin project, which Congress created in 1937, contemplated the withdrawal of large quantities of water from the Columbia River for agricultural irrigation purposes. These waters were to be placed on more than one million acres of arid lands in east-central Washington, located on the plateau to the south and east of the river. Project waters were first placed upon the lands in the northern portions of the project in 1952, in the area known as the Quincy Basin.

Water from surface irrigation in the northern portion of the project enters the ground and percolates south. In traveling to the southern part of the project, the water flows through the Black Sands region, where the plaintiffs own farm land. The natural dissipation of the water is prevented by the presence of O'Sullivan Dam, with a resulting rise in the water table due to the creation of a shallow aquifer storing a large amount of ground water. A Department of Ecology 5–year study conducted between 1967 and 1972 disclosed that between 1952 and 1968 approximately 2.73 million acre-feet of water had been added as inactive storage as a result of percolation from project irrigation.

At the time the Columbia Basin project began operation, much of the land in the southern portion of the project could not be irrigated under existing technology, due to the nature of the terrain and soil. Those regions were therefore classified as non-irrigable, and irrigation delivery facilities were not constructed for them. During the mid–1960s the introduction of the center pivot sprinkler system made irrigation of these lands feasible. Landowners began to sink wells to pump ground water for irrigation due to the higher water table resulting from the project.

In 1973, the State of Washington began management of this ground water. In that year, the Quincy Ground Water Subarea was created, and the Washington Department of Ecology declared that no further public ground water was available for appropriation. All parties claiming an interest in the artificially stored ground waters were required by Wash.Rev.Code § 90.44.130 to file a declaration to that effect with the Department. Ten claims were filed, nine by individuals, and one by the United States Bureau of Reclamation.

Following adjudication of those claims, the Department of Ecology rejected the individuals' claims to ownership of the artificially stored groundwater. It accepted the claim of the United States in the amount of 3,493,142 acre-feet stored, of which 614,142 acre-feet were subject to withdrawal and use.

Under the regulations promulgated by the Department of Ecology at Wash.Admin.Code § 174–134A–130, landowners are required to have both a contract with the Bureau of Reclamation and a state permit before withdrawing ground water. Accordingly, plaintiffs entered into license agreements with the United States. These provide the means of determining the payment due the United States for use of the water. The formula contains two elements: (1) it requires the landowners to pay an annual charge based on their acreage to offset the cost of construction of the Project; and (2) it requires them to pay an annual fee for the continued operation and maintenance of the project. Of these charges, the United States credits 75 percent of the annual operation and maintenance component to the defendant irrigation districts.

## PROCEDURAL BACKGROUND

The plaintiffs sought declaratory and injunctive relief in a class action. They asked the district court to declare that the charges created by the license agreements were invalid because the federal defendants exceeded their statutory authority, the charges were unreasonable and uncon-

scionable under Washington law, and the charges violated the taking clause of the Fifth Amendment. The United States counterclaimed against two plaintiffs for payment of past due fees under the agreements.

The court granted summary judgment in favor of the defendants on all of plaintiffs' claims. It also granted summary judgment in favor of the United States on its counterclaims. The court held (1) it lacked jurisdiction to review the determination by the Secretary of operation and maintenance costs under the pricing formula incorporated in its license agreement; (2) the Secretary did not exceed his statutory authority; (3) the Secretary's action did not constitute a taking of private property without due compensation in violation of the Fifth Amendment; (4) the plaintiffs' contracts with the United States were not unconscionable under Washington law; and (5) the plaintiffs failed to allege any facts to support their claim that the United States is equitably estopped from enforcing the payment terms in the contracts.

### DISCUSSION

On appeal, the plaintiffs argue that the district court erred in granting summary judgment against them on the first three issues listed above.[1]

### I. STANDARD OF REVIEW

We review de novo the district court's findings regarding jurisdictional issues. *United States v. Triple A Machine Shop, Inc.*, 857 F.2d 579, 583 (9th Cir.1988). We also review de novo the court's grant of summary judgment. *Kruso v. International Telephone & Telegraph Corp.*, 872 F.2d 1416, 1421 (9th Cir.1989).

### II. JURISDICTION TO REVIEW CONTRACT GROUND WATER RATES

In their amended complaint, the plaintiffs sought declaratory and injunctive relief based on their allegation that the charges being assessed for project operation and maintenance in their ground water contracts with the government were unreasonable.[2] The district court found that it lacked jurisdiction to review the reasonableness of the charges because, based on the language in § 9(e) of the Reclamation Project Act, 43 U.S.C. § 485h(e), those charges are committed to agency discretion under the Administrative Procedures Act ("APA"), 5 U.S.C. § 701(a)(2).

Section 485h(e) provides in relevant part: Contracts to furnish water—In lieu of entering into a repayment contract pursuant to the provisions of subsection (d) of this section to cover that part of the cost of the construction of works connected with water supply and allocated to irrigation, the Secretary, in his discretion, may enter into either short- or long-term contracts to furnish water for irrigation purposes. Each such contract shall be for such period ... and at such rates as in the Secretary's judgment will produce revenues at least sufficient to cover an appropriate share of the annual operation and maintenance cost and an appropriate share of such fixed charges as the Secretary deems proper, due consideration being given to that part of the

---

1. In their briefs before this court, plaintiffs do not raise their unconscionability and equitable estoppel claims, on which the district court granted summary judgment. Those are waived on appeal. *See Miller v. Fairchild Indus., Inc.*, 797 F.2d 727, 738 (9th Cir.1986) (declining to consider claims on which summary judgment had been granted, noting that "[t]he Court of Appeals will not ordinarily consider matters on appeal that are not specifically and distinctly argued in appellant's opening brief"); *International Union of Bricklayers and Allied Craftsmen Local No. 20 v. Martin Jaska, Inc.*, 752 F.2d 1401, 1404 (9th Cir.1985).

2. The contracts provide for annual payments per acre under the following formula:
   a. 75% of the estimated average Project-wide irrigation district per-acre O[peration] & M[aintenance] cost for the year, determined by including 56,000 acres (estimated acreage to be subject to ground water licenses) in the Project acreage for calculating per-acre cost; plus
   b. $1.70 for participation in Project construction repayment.
   The plaintiffs do not appear to be complaining about the formula itself. Rather, they challenge the operation and maintenance costs being assessed by the Secretary.

cost of construction of works connected with water supply and allocated to irrigation; and shall require payment of said rates each year in advance of delivery.

### A. Does § 485h(e) Apply?

■ As a preliminary matter, we must determine whether 43 U.S.C. § 485h(e) applies to the license agreements in this case. The plaintiffs argue that it does not.[3] They point to the first clause of the statute: contracts under § 485h(e) can be entered "[i]n lieu of entering into a repayment contract pursuant to the provisions of subsection (d) of this section." Because § 485h(d) applies only to *organizations* entering into repayment contracts with the United States for the delivery of irrigation water in connection with *new* projects,[4] the plaintiffs argue that § 485h(e) cannot apply to private landowners or water created as a result of an existing irrigation project.

We reject the plaintiffs' reading of the statute. Although § 485h(d) expressly limits its application to water users' organizations, § 485h(e) contains no such limiting language. Moreover, although § 485h(d) applies only to new projects, § 485h(e) does not differentiate between new and existing ones. Subsection (e) therefore allows the United States to enter into repayment contracts with private persons *or* organizations in connection with new *or* existing projects. Such contracts are permitted "in lieu of" those with organizations in connection with new projects under subsection (d).

The plaintiffs argue that Congress did not "contemplate" that § 485h(e) would apply to contracts with private ground water users. Although Congress may not have contemplated this fact situation in enacting § 485h(e), we find that the purpose of the statute is met by applying it here. Section

485h(e) is intended to allow the government to cover the costs associated with furnishing water for irrigation purposes. In this case, the government has, in an indirect way, supplied water to landowners for irrigation purposes. The plaintiffs admit federal law requires that they pay for the ground water.[5] The plain language and purpose of § 485h(e) mandate that we apply it in this case.

### B. Jurisdiction to Review Contract Charges

■ Having found that § 485h(e) applies, we consider whether the court has jurisdiction to review charges assessed under that statute. The APA precludes judicial review when "agency action is committed to agency discretion by law." 5 U.S.C. § 701(a)(2). This judicial review exception is "very narrow." *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 410, 91 S.Ct. 814, 820, 28 L.Ed.2d 136 (1971). It applies "in those rare instances where 'statutes are drawn in such broad terms that in a given case there is no law to apply.'" *Id.* (quoting S.Rep. No. 752, 79th Cong., 1st Sess. 26 (1945)). "[E]ven where Congress has not affirmatively precluded review, review is not to be had if the statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion." *Heckler v. Chaney*, 470 U.S. 821, 830, 105 S.Ct. 1649, 1655, 84 L.Ed.2d 714 (1985).

Applying § 701(a)(2) to the charges imposed in the repayment contracts under § 485h(e), we hold that maximum charges for operation and maintenance costs are committed to agency discretion by law. The statute appears to set a standard for *minimum* charges by requiring that the

---

**3.** The plaintiffs did not make this argument in the district court. In fact, they stated in their amended complaint that "Congress authorized the Secretary of Interior to execute contracts with users of water from federal irrigation projects in order to recover the construction, operation and maintenance costs thereof." The plaintiffs therefore admitted below that their contracts with the United States were authorized by federal law.

**4.** Section 485h(d) states in relevant part:

No water may be delivered for irrigation of lands in connection with any new project, new division of a project, or supplemental works on a project until an organization, satisfactory in form and powers to the Secretary, has entered into a repayment contract with the United States, in a form satisfactory to the Secretary ...

**5.** *See supra* note 3.

charges produce sufficient revenues to cover project operation and maintenance costs. This standard, however, is not relevant in determining whether Congress has created a meaningful standard of reviewing *maximum* charges, the issue in this case. *See Abdelhamid v. Ilchert,* 774 F.2d 1447, 1449 (9th Cir.1985) ("In deciding whether agency action is required by law, we review the statute granting agency discretion in the context of a particular complaint."); *Marshall v. Kleppe,* 637 F.2d 1217, 1221 (9th Cir.1980) ("To determine whether the parties have raised claims for which there is law to apply, we look to the allegations in the complaint.").

We find no meaningful standard for determining a *maximum* price to be charged under § 485h(e). Judicial review of the operation and maintenance costs being assessed the plaintiffs is not available.[6] *See also Arizona Power Auth. v. Morton,* 549 F.2d 1231, 1240–53 (9th Cir.) (holding that there is no judicial review of the Secretary's determination of preference in entering into water contracts with municipalities under 43 U.S.C. § 485h(c)), *cert. denied,* 434 U.S. 835, 98 S.Ct. 124, 54 L.Ed.2d 97 (1977); *City of Santa Clara v. Andrus,* 572 F.2d 660, 667–68 (9th Cir.) (same), *cert. denied,* 439 U.S. 859, 99 S.Ct. 176, 58 L.Ed.2d 167 (1978).

■ The plaintiffs argue that state law provides the standard for reviewing the contract charges. The Washington Administrative Code, establishing the management policy for the Quincy Ground Water Subarea, provides:

> No use of water under a permit ... shall take place until the recipient of such permit shall enter into an agreement with the [B]ureau [of Reclamation], on a form and in a content, approved and previously agreed to by the [B]ureau and the [D]epartment [of Ecology], pertaining to withdrawal of artificially stored ground water. The agreement shall relate to *reasonable charges* for withdrawal of artificially stored ground waters

and other pertinent provisions necessary to *comply with federal law* and ensure payment of such charges.

Wash.Admin.Code § 174–134A–130(1) (emphasis added). The plaintiffs argue that this regulation imposes a requirement that charges for ground water be "reasonable."

We reject this argument. The regulation indicates that the contracts must "comply with federal law." As noted by the district court, the language of the regulation is evidence that it is "intended to implement federal law, not usurp it." The federal statute commits the amount of operation and maintenance costs to the agency's discretion. State law does not create a "reasonableness" standard of judicial review.

## III. SCOPE OF SECRETARY'S AUTHORITY

■ Although we do not have jurisdiction to review the charges, we must still determine if the agency acted within the scope of its authority. *See Assiniboine and Sioux Tribes v. Board of Oil and Gas Conservation,* 792 F.2d 782, 791–92 (9th Cir.1986). The plaintiffs argue that "the Secretary exceeded his authority under state law in that he has imposed charges which are unfair and unreasonable."

■ As discussed above, state law does not impose a reasonableness standard for rates under the license agreements in this case. The Secretary acted well within the scope of his authority in assessing contract charges under § 485h(e) and Wash.Admin. Code § 173–134A–130(1). *See City of Fresno v. California,* 372 U.S. 627, 631–32, 83 S.Ct. 996, 998–99, 10 L.Ed.2d 28 (1963) (holding that the Bureau of Reclamation acted within the scope of its authority in setting water rates under § 485h(c)).

## IV. UNCONSTITUTIONAL TAKING OF PLAINTIFFS' PROPERTY

■ The plaintiffs' last argument is that a violation of the Fifth Amendment's taking clause has occurred because there is no

---

**6.** Our holding does not prevent the application of state contract law principles. In this case, the district court found that the license agreements were not unconscionable as a matter of Washington law, and the plaintiffs did not appeal this decision.

relationship between the payments extracted from ground water users and the benefits received by them. This argument fails because, as the district court held, they have no property interest in the ground water as a matter of law. *See Peterson v. United States Dept. of the Interior,* 899 F.2d 799, 807 (9th Cir.1990) (the first step in taking analysis is "to determine whether there is a property right that is protected by the Constitution").

We have noted that project water "is not there for the taking (by the landowner subject to state law), but for the giving by the United States." *Israel v. Morton,* 549 F.2d 128, 132 (9th Cir.1977). In this case, the Washington Department of Ecology found in 1975 that only the United States had a valid claim to the ground water in the Quincy Subarea, rejecting claims of several private landowners. The Washington Supreme Court upheld that determination, finding that because the United States had not abandoned or forfeited its claim, the artificially stored groundwater was not public water. *Jensen v. Department of Ecology,* 102 Wash.2d 109, 685 P.2d 1068, 1071–72 (1984). The plaintiffs had no property interest which could be taken by the government.

AFFIRMED.

REINHARDT, Circuit Judge, concurring:

On appeal, appellants urge that the Secretary's authority to set rates for the ground water involved is governed by state, not federal, law. According to appellants, section 485h(e) has no "bearing on the issue of ground water charges in the Quincy subarea." Rather, the appellants assert that state statutes and regulations furnish both the authority and the standards for the Secretary's setting of ground water charges. This argument is simply wrong, and the majority correctly rejects it in section II.A of the opinion. There is no need, in my opinion, for the majority to have gone further. Appellants do not argue that, if section 485h(e) applies, the Secretary's rates are nevertheless invalid. We therefore have no occasion to consider whether section 485h(e) provides standards by which we can judge the Secretary's action. Nor need we determine the effect of the state's reasonable rate provision upon the Secretary's authority under section 485h(e). Accordingly, I decline to join sections II.B and III of the majority opinion. I do agree, however, with section IV, in which my colleagues conclude that there has been no taking under the fifth amendment.