# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 99-1895

_____

| | |
|---|---|
| Concerned Irrigators; Harold Nelson; Laurie Barnaud, | * <br> * <br> * |
| Plaintiffs - Appellants, | * <br> * |
| v. | * <br> * |
| Belle Fourche Irrigation District; Gary Brunner; Darrell Cox; Steve Gatzke; Harlan Palo; Arthur Persche; Robert Ruff; Walter Stumpf, Individually and in Their Official Capacity as the Board of Directors of the Belle Fourche Irrigation District, | * <br> * <br> * <br> * <br> * <br> * <br> * <br> * |
| Defendants - Appellees. | * |

_____

No. 99-1922

_____

Appeals from the United States
District Court for the
District of South Dakota.

| | |
|---|---|
| Concerned Irrigators; Harold Nelson; Laurie Barnaud, | * <br> * <br> * |
| Plaintiffs - Appellees, | * <br> * |
| v. | * <br> * |
| Belle Fourche Irrigation District; Gary | * |

Brunner; Darrell Cox; Steve Gatzke;      *
Harlan Palo; Arthur Persche; Robert      *
Ruff; Walter Stumpf, Individually        *
and in Their Official Capacity as the    *
Board of Directors of the Belle          *
Fourche Irrigation District,             *
                                         *
        Defendants - Appellants.         *

_____

Submitted: February 14, 2000

Filed: January 2, 2001
_____

Before BEAM and JOHN R. GIBSON, Circuit Judges, and PRATT,[*] District Judge.
_____

JOHN R. GIBSON, Circuit Judge.

This case involves the Belle Fourche Irrigation District's method of assessing construction debt and operation and maintenance (O & M) costs to the landowners in the District. Concerned Irrigators, a landowners' association, and Harold Nelson and Laurie Barnaud, individual landowners, appeal the district court's[1] grant of summary judgment to the District. The appellants (collectively, Concerned Irrigators) argue that the District is violating both federal law, which requires construction charges to be equitably apportioned, and state law, which requires assessments to be made with regard to the benefit received. We affirm.

_____

[*]The Honorable Robert W. Pratt, United States District Judge for the Southern District of Iowa, sitting by designation.

[1]The Honorable Richard H. Battey, United States District Judge for the District of South Dakota.

-2-

The United States Bureau of Reclamation constructed the Belle Fourche Irrigation Project in the early part of the twentieth century to deliver water to the arid lands of western South Dakota. After its completion, the project was operated by the Bureau. In 1949, the Belle Fourche Irrigation District, an organization formed by the landowners whose lands were irrigated by the project, took over the project's operation and maintenance.

The District annually assesses the landowners within the District to cover each landowner's share of construction debt and O & M costs. Over the years, the District and the Bureau have entered into several different contracts that require, among other things, repayment of construction costs. Four contracts are relevant to this dispute: the 1949 contract, the 1963 Keyhole contract, the 1971 contract, and the 1984 contract.

Under the 1949 contract, those who owned less productive land were assessed at a lower rate for both construction debt and O & M costs:

> All assessments, tolls, or other charges against individual tracts in the District for the purpose of paying the District's obligations shall be fixed for the different classes of land at such ratios as may be determined by the District's Board of directors: Provided, That all assessments shall be within the percentage ratios as follows, all ratios being based on a ratio of 100 for class 1 land:
> 
> Class 1 - 100
> Class 2 - 88-92
> Class 3 - 60-65
> Class 4 - 40-50

Class 1 lands are the most productive; Class 4 lands are the least productive.

In 1963, the Bureau and the District entered into a contract that allowed the District to receive water from the newly constructed Keyhole Reservoir in Wyoming. The Keyhole contract amended the 1949 contract to provide for payment of Keyhole

construction debt and Keyhole O & M costs. The assessment method for these charges was the same as the method provided in the 1949 contract.

The District's board of directors proposed a different method of assessment in 1970. Under this proposal, the O & M costs were to be assessed equally based on the number of irrigable acres owned. Those who owned less productive land would no longer be assessed at a lower rate for O & M costs. In addition, the ratios for the land classes, which would still be used to assess construction debt, were to change. After the board passed the resolution, it submitted the proposal to the landowners for a vote. Of the 549 eligible voters, 363 voted, with 200 in favor of the change. The District and the Bureau then entered into a new contract in 1971, which modified both the 1949 contract and the 1963 Keyhole contract. The 1971 contract incorporated the new assessment method:

> The assessments to pay annual operation, maintenance, and replacement costs and assessments for any and all special or reserve funds shall be assessed equally against all irrigable acres irrespective of land classification. All assessments, tolls, or other charges against individual tracts of land in the District for the purpose of paying annual construction installments due under all contracts shall be fixed for the different classes of land at such ratios as may be determined by the District Board of Directors: Provided, That all assessments shall be within the percentage ratios as follows, with all ratios being based on a ratio of 100 for Class 1 lands:
> >  Class 1 - 100
> >  Class 2 - 65-80
> >  Class 3 - 10-25
> >  Class 4 - 1-10

In 1983, Congress enacted a law that designated the project as the Belle Fourche Unit of the Pick-Sloan Missouri Basin Program, allowing the project to benefit from the

sale of hydroelectric power in the basin.[2] The purpose of the law was to modernize and improve the irrigation facilities in the District and to promote recreation and fish and wildlife preservation. The Bureau and the District entered into a new contract in 1984 to establish a new repayment plan for construction debt. By its terms, the contract superseded the 1949 contract and a 1976 contract that is not relevant here. The 1963 Keyhole contract was incorporated into the 1984 contract. The 1971 contract was not mentioned; however, the District continued to assess the landowners in accord with its provisions.

Today, the District assesses O & M costs equally per irrigable acre, as provided by the 1971 contract. The District assesses construction debt proportionally based on land class, but whether it is using the ratios from the 1971 contract is not clear.

Nelson and Barnaud filed suit individually and on behalf of Concerned Irrigators, an association of Class 3 and 4 landowners within the District. Concerned Irrigators alleged that the District's method of assessment is improper and in violation of its contractual and statutory obligations. The district court found that the 1971 contract was valid, that the 1984 contract did not supersede the 1971 contract, and that the District's assessment of O & M costs complies with its contractual obligations. The court also found that the District's assessment of construction debt complies with federal law. Concerned Irrigators appeals the court's grant of summary judgment for the District. The District cross-appeals, arguing that the district court lacked jurisdiction to review the assessment rates.

---

[2]Act of Nov. 17, 1983, Pub. L. No. 98-157, 97 Stat. 989 (authorizing rehabilitation of the Belle Fourche irrigation project).

## I.

Citing <u>Flint v. United States</u>, 906 F.2d 471 (9th Cir. 1990), the District argues that the authority to set assessments is a discretionary function of the Bureau of Reclamation and that the district court therefore lacked jurisdiction to review the assessment method. In <u>Flint</u>, the Ninth Circuit held that the Administrative Procedure Act precluded review of the Secretary of the Interior's discretionary act of setting maximum O & M charges because there were no meaningful standards against which to judge the action. 906 F.2d at 475-76. Here, Concerned Irrigators is challenging decisions made by the District, not by the Secretary or the Bureau. <u>Flint</u> does not speak to the setting of assessments by a private irrigation district, and the district court did not lack jurisdiction to review the District's method of assessment.

## II.

We review a grant of summary judgment de novo. <u>Richmond v. Fowlkes</u>, 228 F.3d 854, 857 (8th Cir. 2000). We view the evidence in the light most favorable to the nonmoving party, upholding summary judgment if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. <u>Id.</u>; Fed. R. Civ. P. 56(c).

## A.

Concerned Irrigators argues that the District's equal assessment of O & M costs and proportional assessment of construction debt does not comply with state law

provisions requiring assessments to be made according to the benefit received.[3]  See S.D. Codified Laws §§ 46A-7-1 and 46A-7-5 (1999).

The District need not assess the landowners according to the benefit received if its contract with the Bureau requires a different method of assessment.  South Dakota law authorizes an irrigation district to assess in accord with the terms of its contract with the United States.  S.D. Codified Laws § 46A-7-7 (1999).[4]  The question we must answer, then, is whether the District's contract with the Bureau establishes a method of assessment.

---

[3]The District argues that state law does not apply to the operation of a federal reclamation project, citing Ivanhoe Irrigation District v. McCracken, 357 U.S. 275, 291 (1958).  This argument is without merit.  The Reclamation Act provides:

> Nothing in this Act shall be construed as affecting or intended to affect or to in any way interfere with the laws of any State or Territory relating to the control, appropriation, use, or distribution of water used in irrigation, or any vested right acquired thereunder, and the Secretary of the Interior, in carrying out the provisions of this Act, shall proceed in conformity with such laws . . . .

43 U.S.C. § 383 (1994).  Reclamation projects are therefore subject to state law, so long as that law is not inconsistent with federal law.  See California v. United States, 438 U.S. 645, 670-79 (1978); South Delta Water Agency v. United States, 767 F.2d 531, 536-37 (9th Cir. 1985).

[4]In full, this section provides:

> Whenever any irrigation district, organized under the laws of this state, shall have contracted with the United States for a supply of water for the irrigation of lands within the district, the construction of irrigation or drainage works, or the operation thereof, or both, or other purposes authorized by law, the board of directors is authorized to make the assessments intended to meet the obligations of the district under such contract in accordance with the method and terms as provided by such contract, and no apportionment of benefits by the director of equalization shall be necessary when so provided in said contract.

S.D. Codified Laws § 46A-7-7 (1999).

**B.**

Under the 1971 contract, which modified the method of assessment found in the 1949 and 1963 contracts, the District assessed O & M costs equally for each irrigable acre and construction debt proportionally, using new ratios for the different land classes. Concerned Irrigators argues that the 1971 contract is invalid for three reasons: (1) it was not judicially confirmed as required by federal law, (2) it was not approved by a majority vote of the affected landowners as required by state law, and (3) it was superseded by the 1984 contract.

Federal law gives the United States authority to enter into repayment contracts with irrigation districts, but specifies that these contracts are not "binding on the United States until the proceedings on the part of the district for the authorization of the execution of the contract with the United States shall have been confirmed by decree of a court of competent jurisdiction, or pending appellate action if ground for appeal be laid." 43 U.S.C. § 511 (1994). Even if the United States is not bound by the 1971 contract because it was not judicially confirmed, the contract is not necessarily invalid. Cf. Restatement (Second) of Contracts § 7 & cmt. a (1979) (where a party has the power to avoid the legal relations created by a contract, that contract is voidable but not void). There is no evidence that the United States has ever attempted to escape any obligation created by the contract. The lack of judicial confirmation does not invalidate the 1971 contract.

Concerned Irrigators also argues that because a majority of all landowners in the District did not vote in favor of the 1971 contract, it is not valid. South Dakota law gives the board of directors of an irrigation district

> the power and authority to enter into any contract with the United States supplementing or amending any original contract with the United States, said original contract having been entered into pursuant to the provisions

of chapters 46A-4 to 46A-7, inclusive; provided, that such supplementary or amendatory contract does not increase the amount of principal indebtedness of the district to the United States as it exists at the date of the supplementary or amendatory contract.

S.D. Codified Laws § 46A-6-8 (1999). South Dakota law also provides that no election or judicial confirmation is required for a supplementary or amendatory contract entered into under section 46A-6-8. S.D. Codified Laws § 46A-6-9 (1999). It is sufficient if the board of directors authorized the execution of the contract by resolution. Id.

The 1971 contract is supplementary to the 1949 and 1963 contracts, and it did not change the amount owed to the United States. Thus, it was within the power of the District's board of directors to authorize the contract by resolution, which it did. The landowner vote was legally unnecessary and does not change the analysis.

Finally, Concerned Irrigators argues that the 1984 contract, which does not mandate a particular assessment method, supersedes the 1971 contract. To support this argument, Concerned Irrigators relies on the law that authorized rehabilitation of the Belle Fourche project, which states: "The Secretary of the Interior . . . is authorized to negotiate and execute an amendatory repayment contract with the Belle Fourche irrigation district . . . . This contract shall replace all existing contracts between the Belle Fourche irrigation district and the United States." Act of Nov. 17, 1983, Pub. L. No. 98-157, § 2(a), 97 Stat. 989.

The following provision from the 1984 contract is the complete discussion of prior contracts between the District and the Bureau:

This contract shall replace in entirety the two existing contracts between the United States and the District covering repayment of costs of Belle Fourche Unit, Contracts Nos. IIr-1555 [the 1949 contract] and 14-06-600-

> 1949A [the 1976 contract]. . . . Contract No. 14-06-600-6979 [the 1963
> Keyhole contract] is attached as Exhibit B and by reference is made a part
> of this contract.

Exhibit B is the 1963 Keyhole contract in its original form. The 1984 contract does not mention the 1971 contract.

The 1971 contract modified both the 1949 contract, which is superseded by the 1984 contract, and the 1963 Keyhole contract, which is incorporated into the 1984 contract. Once the 1963 contract was modified by the 1971 contract, it ceased to exist in its original form. At that point, the District began assessing in accord with the 1971 contract. The District and the Bureau incorporated the 1963 contract into the 1984 contract, and there is no reason to infer that they intended to resurrect the earlier method of assessment. While they did attach the 1963 contract in its original form, the fact that the District continued to assess the landowners in accord with its 1971 contract obligations after entering into the 1984 contract serves to reinforce the most logical conclusion: That is, the 1963 contract currently exists in only one form, as modified by the 1971 contract.[5]

Concerned Irrigators argues that the Bureau and the District could not have intended for the 1971 contract to remain in effect because portions of it conflict with the 1984 contract and that it makes no sense that only the method of assessment would

---

[5]In its brief, Concerned Irrigators alleges that the District might not be assessing construction debt in accord with the ratios provided in the 1971 contract, which could imply that the 1971 modifications to the 1963 Keyhole contract were not incorporated into the 1984 contract. By conceding that the District may be using the 1971 ratios to assess construction debt, Concerned Irrigators fails to raise a genuine factual dispute on this point. In any event, there is no question that the District is assessing O & M costs equally in accord with the 1971 contract, and this fact is a sufficient basis on which to rest our conclusion that the 1963 contract no longer exists in its original form.

survive. We need not determine whether the entire 1971 contract is still in effect because the only provision at issue here is the method of assessment. This provision is still in effect as a modification of the 1963 contract, regardless of whether the remainder of the 1971 contract has survived.

Because the District's contract with the Bureau provides a method of assessment, the District need not comply with South Dakota's benefit-received requirement. Instead, the District is bound by the assessment method found in the 1963 Keyhole contract, as modified by the 1971 contract and as incorporated into the 1984 contract.

## C.

Finally, Concerned Irrigators argues that federal law requires the District to equitably apportion construction costs according to the land's productive value and that the District is not complying with this requirement. 43 U.S.C. § 462 (1994) provides:

> The irrigable lands of each new project and new division of a project approved, after December 5, 1924, shall be classified by the Secretary with respect to their power, under a proper agricultural program, to support a family and pay water charges, and the Secretary is authorized to fix different construction charges against different classes of land under the same project for the purpose of equitably apportioning the total construction cost so that all lands may as far as practicable bear the burden of such cost according to their productive value.

43 U.S.C. § 461 (1994) provides:

> The construction charges which shall be made per acre upon the entries and upon lands in private ownership which may be irrigated by the waters of any irrigation project shall be determined with a view of returning to the reclamation fund the estimated cost of construction of the project, and shall be apportioned equitably.

-11-

Section 462 authorizes the Secretary of the Interior to fix different construction charges for different classes of land without imposing any requirement that the Secretary do so. Because this section refers specifically to the Secretary, it does not apply to the assessment for construction debt made by the District. In any event, the District does assess construction debt differently for the different classes of land, and these classifications are based on the land's productivity. Section 461 simply requires construction charges to be apportioned equitably. The District's proportional assessment of construction debt based on land class does not fall afoul of this standard.

Concerned Irrigators also argues that the law authorizing rehabilitation of the Belle Fourche project governs the District's method of assessment. During the rehabilitation,

> the rates of charge to land class in the unit shall continue to be as established in the November 29, 1949 repayment contract with the district, as subsequently amended and supplemented; thereafter, such rates of charge and assessable acreage shall be in accordance with the amortization capacity and classification of unit lands as then determined by the Secretary.

Act of Nov. 17, 1983, Pub. L. No. 98-157, § 2(c), 97 Stat. 989. Kent Heidt, a Bureau of Reclamation group leader, testified that this provision "allow[s the Bureau] to set a total payment amount for the district . . . ." Heidt also testified that the Bureau's 1995 analysis of the payment capacity of the land in the District, undertaken pursuant to Pub. L. No. 98-157, "would have been used as a basis for determining the total payment of the district." The manager of the District testified that the purpose of determining "the amortization capacity of the lands within the district was to set [the] overall repayment capacity of the district." The 1995 analysis and Pub. L. No. 98-157 do not prescribe a method of assessment. Instead, they are concerned with the District's total payment to the United States.

-12-

*    *    *

We affirm the district court's grant of summary judgment to the District.

A true copy.

    Attest:

        CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.