**DEL PUERTO WATER DISTRICT,**
**Plaintiff,**

**v.**

**U.S. BUREAU OF RECLAMATION,**
**et al., Defendants,**

Westlands Water District, Santa Clara Valley Water District and San Benito County Water District, Defendant–Intervenors

No. CIVF0259340WWWDLB.

United States District Court,
E.D. California.

May 13, 2003.

Michael Victor Sexton, Minasian Spruance Baber Meith Soares and Sexton, Oroville, CA, for Plaintiff.

Maria A. Iizuka, United States Department of Justice, Environment and Natural Resources Div, Sacramento, CA, for Defendants.

Jon–David Rubin, Kronick Moskovitz Tiedemann and Girard, Sacramento, CA, Thomas M. Berliner, Duane Morris LLP, San Francisco, CA, for Defendant–Intervenors.

MEMORANDUM OPINION AND OR-
DER RE: FEDERAL DEFEN-
DANT'S MOTION TO DISMISS;
WESTLANDS WATER DISTRICT'S
& SAN BENITO COUNTY WATER
DISTRICT'S MOTION TO DIS-
MISS; SANTA CLARA VALLEY
WATER DISTRICT'S MOTION TO
DISMISS

WANGER, District Judge.

In separate pleadings, Federal Defendants, Defendant–Intervenors Santa Clara Valley Water District, Westlands Water District, and San Benito County Water District, move to dismiss Plaintiff's complaint, under Fed.R.Civ.P. 12(B)(1) and 12(B)(6). *See* Docs. 28, 30, 31. Plaintiff opposes the motions. *See* Doc. 38. Defendants and Defendant–Intervenors filed re-ply briefs December 6 and December 9, 2002. *See* Docs. 43, 44, 46. The motions were heard March 31, 2003 at 10:00 AM.

## I. *BACKGROUND*

Federal defendants provide the following· undisputed overview of the Central Valley Project origin and the issues in this suit:

The Delta–Mendota Canal (DMC) was constructed by the United States Bureau of Reclamation (Reclamation) as one of the initial features of the Central Valley Project (CVP), authorized by section 2 of the Act of August 26, 1937, 50 Stat. 844. The Tracy Pumping Plant, another of the original CVP facilities, lifts water from the Sacramento–San Joaquin Delta into the DMC where some of the water is conveyed southeasterly about 116 miles to the Mendota Pool on the San Joaquin River and some is diverted west to the San Luis Reservoir. The water is conveyed to the Mendota Pool primarily so Reclamation can perform its water right contract with the Exchange Contractors in which reclamation committed to provide 'substitute water' from the DMC in exchange for the Exchange Contractors' commitments not to divert water from the San Joaquin River pursuant to their senior water rights on that River, thereby allowing reclamation to store water upstream in Millerton Lake behind Friant Dam. Reclamation also entered into CVP water service contracts with districts adjacent to the DMC such as Del Puerto Water District (Del Puerto) … and its predecessor districts. The water that is diverted from the DMC and conveyed to the San Luis Reservoir is ultimately used by water users in both the San Luis Unit and the San Felipe divi-

sion of the CVP. The San Luis Unit of the CVP was authorized by the Act of June 3, 1960, 74 Stat. 156. The statute expressly provided in Section 1 that the San Luis Unit was to be constructed, operated and maintained 'as an integral part of the Central Valley project.' The San Felipe division of the CVP was authorized by the Act of August 27, 1967, 81 Stat. 173, which, like the San Luis Act, expressly provided that the Division was to be constructed, operated and maintained 'as an addition to, and an integral part of, the Central Valley project.'

Doc. 28 at 1–2.

Del Puerto provides the following undisputed background of the Central Valley Project units:

> The CVP consists of nine distinct geographic areas known as Divisions. These are: 1) Trinity; 2) Shasta; 3) Sacramento; 4) American River; 5) Delta; 6) Eastside; 7) San Felipe; 8) West San Joaquin, and; 9) Friant. The Delta Division consists of the Delta Cross Channel, the BUREAU's Tracy Pumping Plant in the South Delta, and the Delta–Mendota Canal. As part of the West San Joaquin Division, the San Luis Unit was authorized in 1960 to be built and operated jointly with the State of California. The San Luis Unit consists of San Luis Dam and Reservoir (joint federal-state facilities), O'Neill Dam, and Forebay (joint federal-state facilities), and related facilities.

Doc. 24 ¶ 12 at 4.

Del Puerto Water District filed this action for declaratory and injunctive relief on August 1, 2002. Doc. 1. Del Puerto filed its First Amended Complaint October 10, 2002. Doc. 24. Del Puerto avers federal jurisdiction exists under 28 U.S.C. § 1331, 43 U.S.C § 390uu and the APA, 5 U.S.C. § 701 et seq. *Id.*

Del Puerto's 1953 contract with the Bureau of Reclamation for water delivery service expired February 28, 1994.[1] Since then, Del Puerto has been operating under a series of interim 2–year delivery contracts. In 1992, Congress enacted the Central Valley Improvement Project Act (CVPIA), which in part requires no new water delivery contracts exceed a term of twenty-five years. CVPIA 3404(c), Pub.L. 102–575, 106 Stat. 4600. The Act also requires the government engage in appropriate environmental review prior to renewing any long-term contracts:

> No such renewals shall be authorized until appropriate environmental review, including the preparation of the environmental impact statement required in section 3409 of this title, has been completed. Contracts which expire prior to the completion of the environmental impact statement required by section 3409 may be renewed for an interim period not to exceed three years in length and for successive interim periods of not more than two years in length until the environmental impact statement required by section 3409 has been finally completed at which time such interim renewal contracts shall be eligible for long-term renewal as provided above.

CVPIA 3404(c), Pub.L. 102–575, 106 Stat. 4600. The Bureau of Reclamation (Defendant) is currently negotiating water delivery contracts with Del Puerto and Interve-

---

1. Contract No. 14–06–200–922, June 10, 1953, *see* original complaint, Doc. 1, filed August 1, 2002, Exh. A.

nor-defendants. These contracts are not expected to near the finalization stage until mid–2004. Doc. 44 at 4.

Del Puerto complains defendants must recognize and grant Del Puerto *water contract delivery priority*, in the to-be-finalized contracts, over contractors in the San Luis Unit of the Central Valley Project (CVP). Del Puerto alleges the San Luis Unit was formed "to receive supplemental water that was *in excess of* that needed to meet the BUREAU's obligation to the Exchange Contractors *and DMC water service contractors, such as DEL PUERTO.*" Doc. 24 ¶ 14 at 4 (emphasis added). Del Puerto, as a DMC contractor, therefore has allegedly enjoyed a "course of dealing," which creates "federal contract priority" to water over San Luis Unit contractors. Del Puerto contends,

> [w]ater demands for the DMC and San Luis Unit are composed of two separate types: CVP water service contractors and Exchange Contractors. The Exchange Contractors conditionally exchanged their senior water rights to water in the San Joaquin River for a CVP water supply from the Delta. The DMC water service contractors also receive their water supply from the Delta. The DMC contractors and Exchange Contractors began receiving water from the Delta at or about the same time, *circa* 1951.

Doc. 24 ¶ 13 at 4. Del Puerto asserts its original contract *"was intended to provide* that the total quantity of water available at Mendota Pool and from the Delta–Mendota Canal in excess of the quantity required to meet the Exchange Contract obligation was to be equally apportioned among ex-

isting and future *Mendota Pool* and *Delta–Mendota Canal (DMC)* contractors *only* [,] based upon their contract quantity." *Id.* ¶ 18 at 6 (emphasis added). Therefore, "by definition and in point of time, the original DEL PUERTO shortage provision contract language excludes apportionment with non-Mendota Pool and/or non-DMC contractors," such as San Luis Unit contractors. *Id.* ¶ 18 at 6.

Del Puerto's first claim for relief alleges the Secretary and Regional Directors' "intended revision to the DEL PUERTO long-term water service contract pursuant to which the BUREAU intends to pro-rate available water supplies equally between DEL PUERTO and San Luis Unit contractors[,] is contrary to the provisions of the DEL PUERTO water service contracts." Doc. 24 ¶ 31 at this 9. This claim requests an injunction, which would forbid the Bureau from treating the San Luis Unit contractors "on an equal footing with that of Del Puerto." *Id.* ¶ 33 at 9. Del Puerto's second claim for relief is identical to the first claim for relief, except that it requests declaratory relief "concerning the BUREAU's obligation to apportion the available water supply among the DMC and San Luis Unit contractors." *Id.* ¶ 37 at 9. Del Puerto claims declaratory relief is required because it has "exhausted any and all administrative remedies available." [2] *Id.*

Del Puerto's third claim for relief alleges the Secretary and Regional Directors' intended revision "is contrary to state law governing priority of appropriative use." Doc. 24 ¶ 38 at 10. Del Puerto contends it has appropriated water to beneficial use since 1950, and this use is prior in time to

**2.** Neither Del Puerto's First Amended Complaint, nor its opposition brief submitted against the motions to dismiss, elaborate the

manner in which Del Puerto "exhausted any and all administrative remedies available."

the San Luis Unit contractors. *Id.* ¶ 39 at 10. Del Puerto alleges this "prior use" entitles it to an absolute priority in time over any "junior appropriator(s)." *Id.* Del Puerto claims "first in time, first in right" law governing water appropriation rights applies to it through the Bureau's State Water Control Board permits:

> The BUREAU obtained its permits to appropriate water for the CVP subject to state law. Under state law, appropriators may only appropriate that water that is put to beneficial use. With the exception of lands not in issue in this action, the Bureau does not put the water appropriated to beneficial use directly, but does so through the use by its contractors. Therefore, the Bureau's right to water depends solely on its contractors' beneficial use thereof. In this capacity, the Bureau must apply state water priority principles.

Doc. 24 ¶ 40 at 10.

Del Puerto requests a temporary, preliminary, and permanent injunction ordering the Bureau to "apportion the available water supply pumped at the Delta among the Exchange Contractors and DMC contractors according to the shortage provisions of the DMC water service contracts that have existed for more than 40 years." Doc. 24 ¶ 1 at 10–11. Del Puerto requests a declaration that the Bureau "may not satisfy its obligation to the San Luis Unit by apportioning water to the San Luis Unit contractors on the same footing as DEL PUERTO and DMC contractors." Doc. 24 ¶ 2 at 11. Del Puerto further requests a declaration that the Bureau "holds its water permits subject to state law governing the appropriation of water" and calls for an order that the Bureau "recognize the priority of water rights in accordance with state law." *Id.* ¶ 3 at 11.

Santa Clara Valley Water District intervened as a Defendant–Intervenor September 9, 2002. Westlands Water District intervened as a Defendant–Intervenor September 24, 2002. San Benito County Water District intervened as a Defendant–Intervenor October 8, 2002. Defendant–Intervenors contend Del Puerto has no greater water delivery priority right than any other CVP contractor.

Defendant–Intervenor Santa Clara Valley Water District moves to dismiss based on subject matter jurisdiction, FRCP (b)(1) and failure to state a claim, FRCP 12(b)(6). Doc. 30. Defendant–Intervenors Westlands Water District and San Benito County Water District move to dismiss based on subject matter jurisdiction, FRCP (b)(1) and failure to state a claim, FRCP 12(b)(6). Doc. 31. Federal defendants move to dismiss under Fed.R.Civ.P. 12(b)(6), failure to state a claim upon which relief can be granted. Doc. 28.

## II. *LEGAL STANDARD*

### A. *Fed.R. Civ.P. 12(b)(1) Motion to Dismiss, Lack of Subject Matter Jurisdiction*

Rule 12(b)(1) of the Federal Rules of Civil Procedure allows a motion to dismiss for lack of subject matter jurisdiction. It is a fundamental precept that federal courts are courts of limited jurisdiction. Limits upon federal jurisdiction must not be disregarded or evaded. *Owen Equipment & Erection Co. v. Kroger,* 437 U.S. 365, 374, 98 S.Ct. 2396, 57 L.Ed.2d 274 (1978). The plaintiff has the burden to establish that subject matter jurisdiction is proper. *Kokkonen v. Guardian Life Ins. Co.,* 511 U.S. 375, 114 S.Ct. 1673, 1675, 128 L.Ed.2d 391 (1994). This burden, at the pleading stage, must be met by pleading

sufficient allegations to show a proper basis for the court to assert subject matter jurisdiction over the action. *McNutt v. General Motors Acceptance Corp.,* 298 U.S. 178, 189, 56 S.Ct. 780, 80 L.Ed. 1135 (1936); Fed.R.Civ.P. 8(a)(1). When a defendant challenges jurisdiction *facially,* all material allegations in the complaint are assumed true, and the question for the court is whether the lack of federal jurisdiction appears from the face of the pleading itself. *Thornhill Publishing Co. v. General Telephone Electronics,* 594 F.2d 730, 733 (9th Cir.1979); *Mortensen v. First Fed. Sav. & Loan Ass'n,* 549 F.2d 884, 891 (3d Cir.1977); *Cervantez v. Sullivan,* 719 F.Supp. 899, 903 (E.D.Cal.1989), *rev'd on other grounds,* 963 F.2d 229 (9th Cir.1992).

A defendant may also attack the existence of subject matter jurisdiction apart from the pleadings. *Mortensen,* 549 F.2d at 891. In such a case, the court may rely on evidence extrinsic to the pleadings and resolve factual disputes relating to jurisdiction. *St. Clair v. City of Chico,* 880 F.2d 199, 201 (9th Cir.1989); *Roberts v. Corrothers,* 812 F.2d 1173, 1177 (9th Cir. 1987); *Augustine v. United States,* 704 F.2d 1074, 1077 (9th Cir.1983). "No presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Thornhill Publishing,* 594 F.2d at 733 (quoting *Mortensen,* 549 F.2d at 891).

Lack of subject matter jurisdiction can be raised at any time by any party. *Am. Fire & Cas. Co. v. Finn,* 341 U.S. 6, 17–18, 71 S.Ct. 534, 95 L.Ed. 702 (1951).

B. *Fed.R. Civ.P. 12(b)(6) Motion to Dismiss, Failure to State a Claim*

A complaint "should not be dismissed unless it appears beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Van Buskirk v. Cable News Network, Inc.,* 284 F.3d 977, 980 (9th Cir.2002) (citations omitted); *see also Gilligan v. Jamco Dev. Corp.,* 108 F.3d 246, 249 (9th Cir.1997) (issue is not whether plaintiff will ultimately prevail, but whether claimant is entitled to offer evidence to support the claim). In deciding a motion to dismiss, the court accepts as true all material allegations in the complaint and construes them in the light most favorable to the plaintiff. *See Newman v. Sathyavaglswaran,* 287 F.3d 786, 788 (9th Cir.2002).

The court need not accept as true, allegations that contradict facts which may be judicially noticed. *See Mullis v. United States Bankruptcy Ct.,* 828 F.2d 1385, 1388 (9th Cir.1987). For example, matters of public record may be considered, including pleadings, orders, and other papers filed with the court or records of administrative bodies, *see Mack v. South Bay Beer Distributors,* 798 F.2d 1279, 1282 (9th Cir. 1986), while conclusions of law, conclusory allegations, unreasonable inferences, or unwarranted deductions of fact need not be accepted. *See Western Mining Council v. Watt,* 643 F.2d 618, 624 (9th Cir.1981); *see also Branch v. Tunnell,* 14 F.3d 449, 453 (9th Cir.1994) ("[A] document is not 'outside' the complaint if the complaint specifically refers to the document and if its authenticity is not questioned."). Allegations in the complaint may be disregarded if contradicted by facts established by exhibits attached to the complaint. *See Durning v. First Boston Corp.,* 815 F.2d 1265, 1267 (9th Cir.1987).

C. *Review Under Administrative Procedure Act ("APA")*

Under the APA, federal courts can only review whether agency decisions were "ar-

bitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A) (2001).

A decision is arbitrary and capricious if the agency:

has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.

*O'Keeffe's, Inc. v. United States Consumer Prod. Safety Comm'n*, 92 F.3d 940, 942 (9th Cir.1996) (quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43, 103 S.Ct. 2856, 77 L.Ed.2d 443 (1983), and citing *Haw. Helicopter Operators Ass'n v. Fed. Aviation Admin.*, 51 F.3d 212, 214–15 (9th Cir.1995) (quoting *Beno v. Shalala*, 30 F.3d 1057, 1073 (9th Cir.1994) (quoting *Motor Vehicle Mfrs. Ass'n*, 463 U.S. at 44, 103 S.Ct. 2856))). Put another way, "if the agency examines the relevant facts and reaches a conclusion that is rationally supported by the facts[,] then its decision is not arbitrary, even if the decision is a 'stupid' one." *United States ex rel. Sequoia Orange Co. v. Sunland Packing House Co.*, 912 F.Supp. 1325, 1341 (E.D.Cal.1995) (quoting *Riverbend Farms, Inc. v. Madigan*, 958 F.2d 1479, 1487 (9th Cir.1992) (Under APA review, "[s]o long as it explains its reasons, [an agency] may adopt a rule that all commentators think is stupid or unneces-

sary.")) (internal citation omitted).[3] "The court will let the agency's decision stand if the 'evidence before the agency provided a rational and ample basis for it.'" Christopher A. Goelz & Meredith J. Watts, *California Practice Guide: Ninth Circuit Civil Appellate Practice* ¶ 14:554 (quoting *Systech Envtl. Corp. v. E.P.A.*, 55 F.3d 1466, 1469 (9th Cir.1995)). "Most importantly, 'review under the arbitrary and capricious standard is narrow, and the reviewing court may not substitute its judgment for that of the agency.'" *United States v. Snoring Relief Labs Inc.*, 210 F.3d 1081, 1085 (9th Cir.2000) (quoting *O'Keeffe's, Inc.*, 92 F.3d at 942 (citing *Marsh v. Or. Natural Res. Council*, 490 U.S. 360, 376, 109 S.Ct. 1851, 104 L.Ed.2d 377 (1989))) (alteration marks omitted).

### D. *Judicial Notice*

"A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed.R.Evid. 201(b) (1984). "A court shall take judicial notice if requested by a party and supplied with the necessary information." Fed.R.Evid. 201(d) (1984). Judicially noticed facts often consist of matters of public record, such as prior court proceedings, *see, e.g., Emrich v. Touche Ross & Co.*, 846 F.2d 1190, 1198 (9th Cir.1988); administrative materials, *see, e.g., Barron v. Reich*, 13 F.3d 1370, 1377 (9th Cir.1994); city ordinances, *see, e.g., Toney v. Burris*,

---

**3.** This is especially true with environmental decisions. *See, e.g., Akiak Native Cmty. v. United States Postal Serv.*, 213 F.3d 1140, 1146 (9th Cir.2000) ("[D]eference is accorded agency environmental determinations not because the agency possesses substantive exper-

tise, but because the agency's decision-making process is accorded a 'presumption of regularity.'") (quoting *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 415, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971)).

829 F.2d 622, 626–27 (7th Cir.1987) (holding that federal courts may take judicial notice of city ordinances); official maps, *see, e.g., Aiello v. Town of Brookhaven,* 136 F.Supp.2d 81, 86 n. 8 (E.D.N.Y.2001) (taking judicial notice of geological surveys and existing land use maps); or other court documents, *see, e.g., Rothman v. Gregor,* 220 F.3d 81, 92 (2d Cir.2000) (taking judicial notice of a filed complaint as a public record). Federal courts may "take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to the matters at issue." *U.S. ex rel Robinson Rancheria Citizens Council v. Borneo, Inc.,* 971 F.2d 244, 248 (9th Cir.1992).

## III. ANALYSIS

A. *Plaintiff's Motion to Strike Defendant's Declarations or, in the Alternative, Convert Defendant's 12(b)(6) Motions to a Rule 56 Summary Judgment Motion; Defendants' Requests for Judicial Notice*

 Plaintiff moves to strike the declarations and exhibits attached to defendant and defendant-intervenor's requests for judicial notice. Plaintiff claims these declarations and exhibits are "outside the scope of the limited analysis" permitted under Rule 12(b)(6). Doc. 38 at 1. Plaintiff is mistaken. In a rule 12(b)(6) Motion to Dismiss, matters of public record may be considered, including pleadings, orders, and other papers filed with the court or records of administrative bodies, *see Mack v. South Bay Beer Distributors,* 798 F.2d 1279, 1282 (9th Cir.1986); *see also Branch v. Tunnell,* 14 F.3d 449, 453 (9th Cir.1994) ("[A] document is not 'outside' the complaint if the complaint specifically refers to the document and if its authenticity is not questioned.").[4]

 There are two exceptions to the general rule that consideration of extrinsic evidence converts a Rule 12(b)(6) motion to a summary judgment motion. *Lee v. City of Los Angeles,* 250 F.3d 668, 688 (9th Cir.2001). First, a court may consider material that the plaintiff properly submitted as part of the complaint or, even if not physically attached to the complaint, material that is not questioned as inauthentic and that is necessarily relied upon by the plaintiff's complaint. *Id.* Second, under

---

4. Plaintiff's request to strike the documents or convert to a summary judgement motion is incomprehensible. Plaintiff cites to some of the same documents to which it objects (*see* Doc. 38 at 11:13–22 citing to SWRCB D–935) and cites the same cases which govern Judicial Notice on a 12(b)(6) motion:

> As noted above, unless the court converts the rule 12(b)(6) motion into a summary judgment motion, the court cannot consider material outside the complaint (*e.g.* facts presented in briefs, affidavits or discovery materials). [Citation omitted] However, documents not physically attached to the complaint may nonetheless be considered by the court on a 12(b)(6) motion to dismiss if: (1) the complaint refers to such documents; the document is 'central' to the

> plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion. [Citation omitted]. Additionally, the court need not accept as true allegations that contradict facts which may be judicially noticed by the court. [Citation omitted] *For example, the court may properly consider matters of public record:* e.g. pleadings, orders, and other papers on file in another action pending in the court; *records and reports of administrative bodies; or the legislative history of law, rules or ordinances. See Mack v. South Bay Beer Distributors, Inc.* 798 F.2d 1279, 1282 (9th Cir.1986).

Plaintiffs Opposition, Doc. 38 at 9:22–28, 10:1–5 (emphasis added).

Federal Rule of Evidence 201, a court may take judicial notice of matters of public record. *Id.* at 689.

Some of the documents' existence and authenticity at issue are not reasonably subject to dispute, *e.g.,* Del Puerto's Long Term Contract, dated June 10, 1953; Senate and House Reports; water permit applications; State Water Resources Control Board Decisions D–990, D–935 and D–1020; a copy of the Bureau's "Report on the Feasibility of Water Supply Development" for the San Luis Unit CVP; a copy of the Bureau's "Integrated Key Milestones" distributed to the public by the Department of Interior; and a copy of California Civil Code § 1450, all of which are public or quasi-public records. Those documents are of a type appropriate for judicial notice. *See Mir v. Little Co. of Mary Hosp.,* 844 F.2d 646, 649 (9th Cir. 1988) ("In addition to the complaint, it is proper for the district court to 'take judicial notice of matters of public record outside the pleadings' and consider them for purposes of the motion to dismiss them.") (quoting *MGIC Indem. Corp. v. Weisman,* 803 F.2d 500, 504 (9th Cir.1986), and citing *Mack v. South Bay Beer Distrib.,* 798 F.2d 1279, 1282 (9th Cir.1986)).

■ Defendants' Motion for Judicial Notice is GRANTED in part and DENIED in part. Judicial Notice is taken of the existence and authenticity of the public and quasi public documents listed. To the extent their contents are in dispute, such matters of controversy are not appropriate subjects for judicial notice. Judicial notice is not taken of the press releases submitted. Plaintiff's motion to strike Defendants' judicial notice requests and attendant documents is DENIED. Plaintiff's motion to convert defendants' 12(b)(6) Motion to a Rule 56 Summary Judgment Motion is DENIED.

**B.** *Santa Clara Valley Water District's Motion to Dismiss*

Santa Clara Valley Water District moves to dismiss Del Puerto's complaint under Fed.R.Civ.P. 12(b)(1) and 12(b)(6). Doc. 30.

**1.** *12(b)(1) motion*

**a.** *Mootness claim* [5]

■ Santa Clara contends Del Puerto's First and Second Claims for Relief are based upon long expired contracts and should therefore be dismissed. Doc. 31 at 4–6 citing Complaint, Doc. 24, ¶¶ 32–33. [6]

Del Puerto counters that it does not contend its "federal contract priority rights" are based upon its expired long-term contract:

> Santa Clara asserts that the claim is moot because the original water service contract expired more than eight years before this action was commenced. [Citation omitted]. Santa Clara obviously misunderstands the gravamen of Del Puerto's claim. The claim is not based on an expired contract. Rather, Del

---

**5.** Santa Clara appears to characterize this issue under its 12(b)(6) motion; Del Puerto treats it as a mootness issue, but does not address the issue under either 12(b)(1) or 12(b)(6) standards. Mootness is a standing and jurisdiction issue, and is evaluated under 12(b)(1).

**6.** Santa Clara also argues that the statute of limitations has expired for any breach of contract claim that is based on the expired contracts. *See* Doc. 30 at 8:5–9. This argument is meritless; Del Puerto does not claim breach of contract.

Puerto asserts that the original long-term contract is evidence of the Bureau's prior conformance with state law. It is further evidence of the parties information, belief, and intent at the time the contracts were signed. Del Puerto does not and did not cast its claims in terms of breach of contract because that is not the nature of the prayer for relief. Nowhere in the First Amended Complaint does Del Puerto assert rights based solely on an expired contract.

Doc. 38 at 4:

This statement expressly contradicts the language of Del Puerto's First Amended Complaint, as well as its arguments at Doc. 38 at 3:28–4:2, 5:25–28, 12:15–24, 13:4–6. Del Puerto's First Amended Complaint states:

> plaintiff,... holds contractual rights to water from defendant United States of America... for distribution of water from the Central Valley project within the DEL PUERTO service area. A true and correct copy of the most recent long-term water service contract between DEL PUERTO and the BUREAU, Contract No. 14–02–200–922 dated June 10, 1953 is attached as exhibit A. (¶ 3 at 2).

Paragraph 31 states: "The SECRETARY and REGIONAL DIRECTOR's intended revision to the DEL PUERTO long-term water service contract pursuant to which the BUREAU intends to pro-rate available water supplies equally... *is contrary to the provisions of the DEL PUERTO water service contract.*" Doc. 24, ¶ 31 at 9 (emphasis added). Paragraph 32 states, "DEL PUERTO does not have a plain, speedy or adequate remedy at law in that the *DEL PUERTO water service contract* provides that the BUREAU shall not be liable in damages for injury resulting from its failure to supply water *pursuant to the terms of the contract.*" (Emphasis added). Paragraph 33 states: "unless restrained and enjoined, the BUREAU will treat the San Luis Unit contractors on an equal footing with that of DEL PUERTO and *fail to apportion water according to the terms of the DEL PUERTO water service contract.*" The same language is repeated in Del Puerto's second claim for relief, except that Del Puerto requests a declaratory judgment. While Del Puerto does not claim Breach of Contract, the language of Del Puerto's First and Second Claims for Relief, and Del Puerto's "federal contract priority rights" legal theory, *is grounded entirely upon its expired, and now inoperative, 1953 contract* and the parties' performance under that contract.

Santa Clara accurately rejoins that Del Puerto's opposition ignores its own amended complaint and advances three new bases for relief: (1) "dicta from State Water Resources Control Board ("SWRCB") Decision D–935; (2) this Court's decision in *Westlands Water District* ...; and (3) the potential hardship Del Puerto could suffer if this Court were to fail to recognize the unusual legal theory developed by Del Puerto." Doc. 46 at 6 citing Opposition Brief, Doc. 38 at 11–12. Santa Clara's reply reiterates its argument that a provisional or interlocutory (non-final) agency decision is not subject to judicial review. This issue is discussed *infra* at 21–27. Del Puerto relies on 42 U.S.C. § 390uu for jurisdiction, which is discussed and rejected *infra* at 28.

It is difficult, if not impossible, to reconcile Del Puerto's First Amended Complaint with its Opposition Brief arguments.

"To satisfy Article III's standing requirements, a plaintiff must show: (1) it

has suffered an injury in fact that is concrete and particularized and is actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167, 181, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000) citing U.S.C.A. Const. Art. 3, § 2, cl. 1.

The Ninth Circuit describes the doctrine of mootness as "the requirement that the controversy remain live even after the plaintiff demonstrates initial standing." *Skysign Intern., Inc. v. City and County of Honolulu*, 276 F.3d 1109, 1114 (9th Cir. 2002). "As the Supreme Court has recently noted, both standing and mootness are jurisdictional issues deriving from the requirement of a case or controversy under Article III." *Cole v. Oroville Union High School Dist.*, 228 F.3d 1092 (9th Cir.2000) citing *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000).

■ "The "capable of repetition, yet evading review" exception to mootness applies only when (1) the challenged action is too short in duration to be fully litigated before cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subjected to the same action again." *Cole*, 228 F.3d at 1098 citing *Spencer v. Kemna*, 523 U.S. 1, 17, 118 S.Ct. 978, 140 L.Ed.2d 43,(1998); *see also Natural Resources Defense Council, Inc. v. Evans*, 316 F.3d 904, 911 (9th Cir.2003) ("Government actions fall within the "capable of repetition, yet evading review" exception when (1) the duration of the challenged action is too short to allow full litigation before it ceases, and (2) there

is a reasonable expectation that the plaintiffs will be subjected to it again.") (citing *Greenpeace Action v. Franklin*, 14 F.3d 1324, 1329 (9th Cir.1992)).

Here, the challenged action has not yet occurred. Final contract negotiations have not yet concluded. Even if allegedly unlawful action is threatened; *i.e.*, that the Agency, the Department of the Interior, will fail to recognize purported vested water rights under state and federal water law to require the government to contract in a particular manner, is to usurp the Agency's administrative discretion delegated by federal law. *See Westlands Water Dist. v. Firebaugh Canal*, 10 F.3d 667, 671 (9th Cir.1993) ("judicial deference to an agency's construction of a statute 'is particularly important where, as here, Congress has vested broad discretion in an agency to interpret a statute....' ... The Reclamation Act of 1902 grants the Secretary of Interior broad authority 'to perform any and all acts ... as may be necessary and proper for the purpose of carrying the provisions of this Act into full force and effect.") *Westlands Water Dist. v. Firebaugh Canal*, 10 F.3d 667, 671 (9th Cir.1993) citing 43 U.S.C. § 373. This case is directly analogous to the *Westlands Water District v. U.S. and Hoopa Valley Tribe*, CIV–F–00–7124, where water users sought to enjoin the Secretary of the Interior from signing a Record of Decision (ROD) providing for restoration of the Trinity River through use of the Central Valley Project, based on a claim that the ROD violated NEPA and the ESA and such action was therefor, arbitrary, capricious, and contrary to law. *See* CIV–F–00–7124, Doc. 85 filed Jan 30, 2001. Such provisional relief was denied as an inappropriate judicial interference with the implementation of the Executive Branch's administrative discretion.

### b. *Ripeness Claim*

 Santa Clara contends the court lacks jurisdiction to hear Del Puerto's complaint because the claim is not ripe for review. Doc. 30 at 9–11. The ripeness requirement "is designed 'to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties.'" *Ohio Forestry Ass'n, Inc. v. Sierra Club,* 523 U.S. 726, 732–733, 118 S.Ct. 1665, 140 L.Ed.2d 921 (1998) citing *Abbott Laboratories v. Gardner,* 387 U.S. 136, 148–149, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967). The doctrine "is concerned with whether the initial decision-maker has arrived at a definitive position on the issue that inflicts an actual, concrete injury." *Puget Sound Energy, Inc. v. U.S.,* 310 F.3d 613, 624–625 (9th Cir.2002) citing *Ma v. Reno,* 114 F.3d 128, 130 (9th Cir.1997) (quoting *Darby v. Cisneros,* 509 U.S. 137, 144, 113 S.Ct. 2539, 125 L.Ed.2d 113 (1993)); *see also Franklin v. Massachusetts,* 505 U.S. 788, 797, 112 S.Ct. 2767, 120 L.Ed.2d 636 (1992) ("The core question is whether the agency has completed its decisionmaking process, and whether the result of that process is one that will directly affect the parties.").

"The Supreme Court has held in other contexts, and so [has the 9th circuit], that if an initial agency action may be modified or reversed during administrative reconsideration or review it is rendered non-final while such review is pending." *Puget Sound Energy, Inc. v. U.S.,* 310 F.3d 613, 624–625 (9th Cir.2002) citing *I.C.C. v. Bhd. of Locomotive Engineers,* 482 U.S. 270, 284–85, 107 S.Ct. 2360, 96 L.Ed.2d 222(1987); *Acura v. Reich,* 90 F.3d 1403, 1408–9 (9th Cir.1996). The ripeness doctrine is grounded in the consideration that "it would waste scarce government resources to undertake parallel judicial review under such circumstances." *Puget Sound,* 310 F.3d at 624–625 citing *Acura,* 90 F.3d at 1407.

 "In deciding whether an agency's decision is, or is not, ripe for judicial review, the Court has examined both the 'fitness of the issues for judicial decision' and the 'hardship to the parties of withholding court consideration.'" *Ohio Forestry,* 523 U.S. at 733, 118 S.Ct. 1665 citing *Abbott Laboratories* 387 U.S. at 148–149, 87 S.Ct. 1507. Factors to consider are: "(1) whether delayed review would cause hardship to the plaintiffs; (2) whether judicial intervention would inappropriately interfere with further administrative action; and, (3) whether the courts would benefit from further factual development of the issues presented." *Ohio Forestry,* 523 U.S. at 733, 118 S.Ct. 1665; *see also Puget Sound,* 310 F.3d at 624–625 ("The relevant considerations in determining finality are whether the process of administrative decision making has reached a stage where judicial review will not disrupt the orderly process of adjudication" citing *Port of Boston Marine Terminal Ass'n v. Rederiaktiebolaget Transatlantic,* 400 U.S. 62, 71, 91 S.Ct. 203, 27 L.Ed.2d 203 (1970)).

### 1) *Whether judicial intervention would inappropriately interfere with further administrative action*

Santa Clara contends Del Puerto's complaint "asks the court to restrain and enjoin the Bureau from treating Del Puerto in a certain manner in the contract that has yet to be finalized." Doc. 30 at 8. Del

Puerto has no final long-term contract and the negotiations are expected to continue through mid–2004. Del Puerto does not have even a proposed contract; Santa Clara contends, "the court cannot determine whether the proposed long-term contract shortage provisions that the Bureau will present to Del Puerto are contrary to State or Federal law." *Id.* at 9. Santa Clara argues immediate judicial review "could also hinder the Bureau's efforts to refine its policies and further define the exact language that will be included in Del Puerto's contract." *Id.* at 11 citing *Ohio Forestry,* 523 U.S. at 736, 118 S.Ct. 1665. Santa Clara notes "[t]he purpose of negotiations is to develop 'mutually agreeable terms and conditions,' rather than to draft a contract containing language imposed by the courts through an early declaration of the parties positions, rights, and responsibilities." Doc. 30 at 11:12–15. Any declaratory or injunctive relief could deny the Bureau the opportunity "to revise or even reverse its position as it further consults with its experts and proceeds with the negotiations." Doc. 30 at 11 citing *Pacific Gas and Electric v. State Energy Resources Conservation and Development Comm'n,* 461 U.S. 190, 201, 103 S.Ct. 1713, 75 L.Ed.2d 752 (1983).

Del Puerto does not address this argument; it reiterates its conclusion that the Bureau's indication that contractual priority will not be a basis for negotiation is, "for these purposes... a final agency decision." Doc. 38 at 5:15–19.

### 2) *Whether the court would benefit from further factual development of the issues presented*

According to Santa Clara, "courts have repeatedly emphasized that that [sic] review should be withheld if further factual development would render an issue more complete." Doc. 30 at 10 citing *Assiniboine,* 792 F.2d at 789; *Ohio Forestry,* 523 U.S. at 737, 118 S.Ct. 1665, 140 L.Ed.2d 921 (1998). Santa Clara argues the action would benefit from further factual development because, once the contract provisions are finally developed, "the court will be able to determine exactly how the Bureau proposes to treat not only Del Puerto, but also the other contractors." Doc. 30 at 10. Additional information will be available regarding whether, and how, the final long-term contract language differs from the original long-term contract or priorities. *Id.* at 11. Santa Clara observes, "it is difficult to determine how the court may restrain and enjoin the Bureau from failing to apportion water according to the terms of a contract that is no longer in effect or a contract that has yet to be finalized." *Id.*

Del Puerto responds that "no further factual development is needed. The facts regarding the development and construction of the CVP are well-established and not substantially in dispute. The only further factual development still to occur involves the actual water reduction that will occur after full implication of the terms of the CVPIA."

Santa Clara rejoins that Del Puerto has not shown how further factual development is unnecessary. Doc. 44 at 6:6–8. Santa Clara contends "further implementation of the CVPIA ...will help in resolving this suit," and more factual detail will be known as negotiations progress. Doc. 44 at 6. Santa Clara clarifies it is not asking the court to wait until the contract is signed, but it is asking for a delay until the contracts are "ready to be executed," before the court requires the Bureau to include certain terms. Doc. 44 at 6–7.

As the parties well know, there are at least sixteen cases pending in this court

that implicate evolving implementation of the CVPIA. Four of the cases have been decided on appeal. Three more are on appeal. The additional time will benefit all parties as CVPIA implementation continues to be judicially scrutinized.

### 3) *Whether delayed review would cause hardship to the plaintiffs*

■■■ "To meet the hardship requirement, a litigant must show that 'withholding review would result in 'direct and immediate' hardship and would entail more than possible financial loss.'" *People of Village of Gambell v. Babbitt,* 999 F.2d 403, 408 (1993) quoting *Western Oil & Gas Ass'n v. Sonoma County,* 905 F.2d 1287, 1290 (9th Cir.1990) *cert. denied,* 498 U.S. 1067, 111 S.Ct. 784, 112 L.Ed.2d 846 (1991) (*quoting Winter v. California Medical Review, Inc.,* 900 F.2d 1322, 1324 (9th Cir. 1989)).

Santa Clara asserts Del Puerto does not contend it will suffer immediate hardship or immediate economic loss without judicial review: Del Puerto "will suffer no hardship from a postponement until the terms of the long-term contract are agreed-upon" because it currently receives water under an interim contract. Doc. 30 at 11–12.

Without any explanation, Del Puerto responds that it will suffer harm if the issue is not resolved. Del Puerto concludes all parties will suffer harm, "insofar as they will not know their contractual rights and obligations and cannot plan accordingly." Doc. 38 at 5:13–15. Under *Central Delta Water v. United States,* 306 F.3d 938 (9th Cir.2002), threatened harm is sufficient to provide standing and jurisdiction: "we agree with those circuits that have recognized that a credible threat of harm is sufficient to constitute actual injury for

standing purposes, whether or not a statutory violation has occurred." Cite at [9]. (p. 20 on net copy). However, *Central Delta* is distinguishable. There, the government had made specific annual CVP water allocations which the plaintiffs challenged. Although the Plaintiffs had not yet suffered harm in *Central Delta,* they argued they would suffer harm if the existing water allocations continued. Here, no final agency decision has been made. Del Puerto has provided no explanation as to how it will be harmed without immediate judicial review. In *Central Delta,* plaintiffs demonstrated that *if* federal defendants (the Bureau of Reclamation) violated the applicable statute, which the Bureau said it would not do, plaintiffs would be harmed in 16% of the months CVP water was delivered.

### 2. *12(b)(6) motion*

Santa Clara's arguments, which address Del Puerto's state law claims, replicate federal defendants' and Westlands Water District/San Benito Water Districts' arguments. This issue is addressed infra, at 34–42. Del Puerto does not directly address Santa Clara's 12(b)(6) motion. Doc. 38 at 19:4–6.

### C. *Westlands Water District/San Benito County Water District motion*

Westlands Water District and San Benito County Water District ("Intervenors") jointly move to dismiss Del Puerto's complaint under Fed.R.Civ.P. 12(b)(1) and 12(b)(6). Doc. 31.

### 1. *Intervenors' 12(b)(1) motion*

Del Puerto invokes federal jurisdiction, in part, under federal APA review. Doc. 31 at 3. The APA allows for judicial review

if an individual has suffered "[a] legal wrong because of agency action, or [is] adversely affected or aggrieved by agency action within the meaning of a relevant statute." *Lujan v. National Wildlife Federation,* 497 U.S. 871, 882, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990) citing 5 U.S.C. § 702; *see also Public Citizen v. Department of Transp.,* 316 F.3d 1002, 1019 (9th Cir.2003). The person claiming a right to sue "must identify some 'agency action' that affects him in the specified fashion. Agency action means the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act." *Lujan* 497 U.S. at 883, 110 S.Ct. 3177 citing 5 U.S.C. § 551(13). "When review ... is sought not pursuant to specific authorization in the substantive statute, but only under the general review provisions of the APA, the 'agency action' in question must be 'final agency action.'" *Lujan,* 497 U.S. at 883, 110 S.Ct. 3177 citing 5 U.S.C. § 704 ("Agency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review.").

 Intervenors contend subject matter jurisdiction does not exist under the APA because there is no "final agency action" to review. Doc. 31 at 3 citing 5 U.S.C. § 704. "Two conditions must be met for agency action to be considered final under the APA." *Montana Wilderness Ass'n, Inc. v. U.S. Forest Service,* 314 F.3d 1146, 1150 (9th Cir.2003) citing *Ecology Ctr., Inc. v. U.S. Forest Serv.,* 192 F.3d 922, 925 (9th Cir.1999). "First, 'the action should mark the consummation of the agency's decision making process; and [second], the action should be one by which rights or obligations have been determined or from which legal consequences flow.'"

*Montana Wilderness Ass'n.,* 314 F.3d at 1150 citing *Ecology Ctr., Inc. v. U.S. Forest Serv.,* 192 F.3d 922, 925 (9th Cir.1999) (citing *Bennett v. Spear,* 520 U.S. 154, 177, 117 S.Ct. 1154, 137 L.Ed.2d 281 (1997)).

Intervenors argue that a non-finalized contract is not "final agency action" because it cannot be characterized as "the consummation of the agency's decision making process nor can it be an action affecting rights or obligations that result in legal consequences." Doc. 31 at 4. Del Puerto argues that the Bureau has come to a "decision" about the priority issue and therefore it is "final" regardless of whether the contract itself is final. Because the contract is still under negotiation, and "has not been offered to Del Puerto for execution," Defendants contend the process has not been consummated, rights and obligations have not been defined, and there is no final agency action subject to judicial review. Doc. 31 at 4.

Del Puerto counters that federal jurisdiction exists because Del Puerto's claim is "based on Section 8 of the Reclamation Act of 1902 and its mandate that federal reclamation law follow the state law to the extent not inconsistent with the stated objectives of Congress." Doc. 38 at 3. This basis for jurisdiction applies to plaintiff's Third Claim only. Plaintiffs First and Second claims must have some other source of federal jurisdiction.

Del Puerto argues final agency action is not required because: 1) the district court has jurisdiction under the APA through 43 U.S.C. § 390uu (Doc. 38 at 3,5), or, alternatively; 2) the APA requirement of final agency action is waivable. Doc. 38 at 5–6.

Despite the fact that Del Puerto invokes APA jurisdiction in its First Amended

Complaint,[7] Doc. 24 ¶ 1 at 1–2, Del Puerto now argues the APA is "inapposite." Doc. 38 at 5:22. Del Puerto avers: "subject matter jurisdiction exists in judicial review of agency action only if the action challenged constitutes final agency action *or a statute specifically authorizes judicial review.*" Doc. 38 at 5 citing Doc. 31 at 2:8–10 (emphasis added). Del Puerto contends section 390uu, a statute, "specifically authorizes judicial review of the kind sought here. The rights being adjudicated are contract rights and all the parties are contracting parties under Reclamation Law." [8]

Intervenors rejoin that section 390uu does not provide federal jurisdiction because Del Puerto's claims address a *future, unformed* contract. The critical portion of 390uu states: "Consent is given to join the United States as a necessary party defendant in any suit to adjudicate, confirm, validate, or decree the contractual rights of a contracting entity and the United States *regarding any contract executed pursuant to Federal Reclamation Law.*" [9] 43 U.S.C. 390uu (emphasis added). Section 390uu does not provide jurisdiction for

any of Del Puerto's claims; it pertains to *executed* Federal Reclamation contracts, as Del Puerto admits (Doc. 24 ¶ 31; Doc. 38 at 7:2–13), the disputed future contract under negotiation has not yet been "executed pursuant to Federal Reclamation Law."

Del Puerto argues in the alternative that the final agency action requirement presents no bar to APA jurisdiction because the Bureau has indicated the contractual priority issue is non-negotiable, therefore "further processes with the Bureau by Del Puerto would be futile." Doc. 38 at 6. Del Puerto states, "if the court... rules that the APA is applicable and that there has not been sufficient 'final agency action' under that Act, the court would elevate the exhaustion requirement to the level of the absurd." Doc. 38 at 7:17–19. Del Puerto relies on *Weinberger v. Salfi*, 422 U.S. 749, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975), for the proposition that requiring exhaustion when futile would be a waste of administrative resources. In such a case, "an agency decision may be deemed final before exhaustion of remedies is completed." Doc. 38 at 6.

---

7. Del Puerto's complaint, at 1–2, states:
 1. This action involves claims arising under water service contracts executed pursuant to federal Reclamation Law and claims arising under the Administrative Procedure Act; therefore, the court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, 43 U.S.C. § 390 UU, and 5 U.S.C. § 701 et seq.

8. Del Puerto also cites 390uu to argue the United States has waived its sovereign immunity to suit: "[i]n this case, the sovereign as expressly agreed to be sued by section 221 of the Reclamation Reform Act." Doc. 38 at 3.
 The Section 221 of the Reclamation Reform Act states:
 consent is given to join the United States as a necessary party defendant in any suit to adjudicate, confirm, validate, or decree the contractual rights of a contracting entity

and the United States regarding any contract executed pursuant to Federal reclamation law. The United States, when a party to any suit, shall be deemed to have waived any right to plead that is not amenable thereto by reason of its sovereignty, and shall be subject to judgments, orders, and decrees of the court having jurisdiction, and may obtain review thereof, in the same manner and to the same extent as a private individual under like circumstances. Any suit pursuant to the section may be brought in any United States District Court in the State in which the land involved is situated.
 43 U.S.C. § 390uu. Federal defendants do not address this issue.

9. *See* fn. 8, *supra,* for full text of 43 U.S.C. 390uu.

Intervenors suggest Del Puerto conflates the doctrine of finality with the doctrine of exhaustion. Doc. 46 at 5 n. 5 citing *Salfi*, 422 U.S. 749, 766, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975) ("the requirement of finality is 'something more than simply a codification of the judicially developed doctrine of exhaustion, and *may not be dispensed with merely by a judicial conclusion of futility.*'") (emphasis added). Intervenors contend the court must "determine whether the Bureau's actions are 'final' under section 704 *before* determining whether Del Puerto has fully exhausted the administrative remedies." Doc. 46 at 5 n. 5.

*Salfi* is inapplicable; that case dealt with a constitutional challenge to a social security provision. The Social Security Administration had made an actual decision to deny social security benefits based on a relationship-duration provision in the benefits statute; the decision had been the subject of one hearing and one appeal. Administrative appeal procedures remained, but because the agency's decision was based upon a statutory requirement that could not be altered by the agency, the plaintiff did not pursue additional internal review. The Supreme Court held the plaintiff had reached a "sufficiently high level of review to satisfy the Secretary's administrative needs." 422 U.S. 749, 766, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975). The Secretary did not raise a jurisdictional challenge based on "non-exhaustion" and the Court interpreted that "to be a determination by [the Secretary] that for the purposes of [the] litigation the *reconsideration determination [was] 'final.*'" *Id.* at 767, 95 S.Ct. 2457 (emphasis added). The futility and waste of administrative resources of which the Court spoke referred to the fact that the Secretary could not change the statute upon which

the decision was based; additional appeals of the decision were truly futile. The legal issue concerned the statute's constitutionality itself, not the underlying decision. Contrary to plaintiff's contentions, *Salfi* does not hold that the final agency decision rule under the APA is waivable.

Without explanation, Del Puerto contends that waiting for Interior to finalize the contract risks upending water rights of thousands of CVP water users, and that the "rights and obligations of dozens of contractors will be affected retroactively." Doc. 38 at 7. It also argues the Bureau has had a full opportunity to create a factual record and has no plans to reverse its position, therefore waiting for a finalized contract will not effectuate the exhaustion requirement's purpose. Doc. 38 at 7:14–21. Intervenors rejoin that a "formal basis for negotiations" document has not yet been released, and Del Puerto has only alleged what the federal defendants are unwilling to include it in the negotiations. *Id.*

There has been no final agency decision. The parties continue to negotiate the contract, which is not anticipated to be signed for another 12–18 months. Del Puerto submits a declaration from William Harrison, the Water District's manager, which states Del Puerto "has been told" by the Bureau's Mid–Pacific Regional Director Kirk Rogers that a water priority contract provision "will not be included in the basis for negotiations." Doc. 42 ¶ 4 at 2. Such an oral expression of negotiating posture simply does not constitute "final agency decision." Were it so, the courthouse doors would be flung wide open to any number of parties negotiating government contracts as soon as a point in the negotiations went against the non-governmental party. Such an oral expression does not

"mark the consummation of the agency's decision making process," and it does not determine legal rights or create legal consequences. *See Montana Wilderness Ass'n.,* 314 F.3d at 1150 citing *Ecology Ctr., Inc. v. U.S. Forest Serv.,* 192 F.3d 922, 925 (9th Cir.1999) (citing *Bennett v. Spear,* 520 U.S. 154, 177, 117 S.Ct. 1154, 137 L.Ed.2d 281 (1997)).

The Plaintiffs' position invites an advisory opinion. There is still ample time for Interior to change its negotiating position. A government negotiating "indication" is not final agency action. Del Puerto's claims are contrary to Ninth Circuit law.

### 2. *Intervenors' 12(b)(6) motion*

Intervenors proffer three 12(b)(6) arguments: (1) Del Puerto's priority claim is based on an expired contract, therefore, even if that contract provided a priority, such a right expired with the contract in 1996; (2) Del Puerto's "congressional intent/course of dealing" claim is not proved; and, (3) no legal authority exists to support Del Puerto's state law "appropriative right" claim. Intervenors contend that once Del Puerto's 1953 contract expired, any rights under it expired. Furthermore, "even if such a right once existed, Del Puerto waived it." It appears Intervenors also argue that because Del Puerto has not, in its interim contracts, reasserted its supposed priority right under Article 9 of its long-term contract, Del Puerto waived any such right. Doc. 31 at 5.

Del Puerto responds that federal contract priority rights have already been recognized in the *Westlands* decision, which established the Exchange Contractor's priority over CVP contractors. Doc. 38 at 19:4–24. Del Puerto contends:

[t]he Exchange Contractors enjoy a *contractual* priority to water from the CVP. . . . the fact that such a priority may stem from a valid threat to exercised preexisting water rights is irrelevant. Because the exchange contractors [sic] substitute water delivered by the CVP is obtained through contract and that water is guaranteed, a federal contract priority does exist within the CVP.

Doc. 38 at 19 (emphasis added). Del Puerto dismisses Intervenors' waiver argument, stating that it has "repeatedly sought to have contractual priority included in the basis for negotiations." Doc. 38 at 19:22–24. Del Puerto does not address Intervenors' arguments on course of dealing, congressional intent, or the state law claim.

Intervenors rejoin that Del Puerto has ignored and not refuted Intervenors' allegation that whatever contract rights existed in the now-expired long-term contract are gone. Doc. 46 at 7:6–9. Intervenors contend the Bureau has always allocated water among CVP contractors on a pro rata basis and that the congressional document cited by Del Puerto does not show any governmental intent to grant Del Puerto a contractually based priority for CVP water. Doc. 46 at 7. This is inaccurate. As Intervenors well know, the Bureau makes preferential allocations to certain Exchange Contractors based on contract-based priority recognizing preexisting vested water rights that were exchanged. The judicial decision recognizing such priority is now on appeal.

Intervenors reiterate the argument that the *Westlands Water District* decision does not create a generic "federal contract priority;" Del Puerto is not in the same position as the Exchange Contractors in *Westlands Water District.* Doc. 46 at 8–9. Intervenor allege Del Puerto has no preexisting water rights, nor is there any prece-

dent for creating federal "contract priority" based on water service under a now-terminated agreement. Finally, Intervenors contend D–935 is inapplicable as it was an interim-water decision and Del Puerto's trust concept, whether true or not, does not support a federal contract priority arising from a state water law claim. Doc. 46 at 8–9.

Del Puerto's argument that the *Westlands* decision constitutes judicial recognition of a generic "federal contract priority right" categorically misstates the Westlands' holding *See infra* at 38–39. Del Puerto does not address its First and Second Claims—that Del Puerto continues to enjoy contractually-based rights, arising from a contract that expired eight years ago. D–935 lends no support for Del Puerto's claims, as addressed *infra* at 38–39.

### D. *Federal Defendants' Motion to Dismiss*

Federal defendants move to dismiss Del Puerto's complaint under Fed.R.Civ.P. 12(b)(6), Doc. 28, on the grounds that Del Puerto's water rights arising from their prior contract are neither superior nor inferior to the other San Luis Unit contractors. Doc. 28 at 5. Federal defendants oppose any legal claim to superior water rights based on Del Puerto's signing water delivery service contracts prior to the other San Luis Unit water districts. Doc. 28 at 9. Defendant proffers the following arguments: 1) no federal policy or legal precedent exists for Del Puerto's claim, (claims 1 & 2); 2) Del Puerto incorrectly relies upon the Exchange Contractors' judicially affirmed vested water rights priority (over other CVP users) as an example of applicable federal water rights contract priorities, (claims 1 & 2); and, 3) contract-

ing water districts who apply water to beneficial use do not acquire any appropriative federal water rights cognizable under state law, (claim # 3). *Id.* citing *Westlands Water District v. United States*, 153 F.Supp.2d 1133 (E.D.Cal.2001) and *Orff v. United States*, CVF–93–5327–OWW, *appeal pending*, Ninth Circuit No. 00–16922.

### 1. *Del Puerto's First & Second Claim*

Federal Defendants contend, "Del Puerto can point to no legal basis for asserting a prior right to DMC water based on Federal law, State law, its expired contract, its interim contracts or any decision of the SWRCB." Doc. 28 at 10–11. Defendants claim Del Puerto's implied reliance on *Westlands Water District v. United States*, 153 F.Supp.2d 1133 (E.D.Cal.2001), is misplaced. Westlands Water District addresses the relationship between the Bureau's commitment of CVP water to the Exchange Contractors and the Bureau's commitment of CVP water to contractors in the San Luis Unit and Friant Units of the CVP. Del Puerto's status as a CVP contractor is not comparable to the "Exchange Contractors." *Id.* at 10. Federal defendants assert their statutory right "to manage the CVP as an integrated whole." *Id.* citing *Westlands Water District*, 153 F.Supp.2d at 1158.

Del Puerto admits its claim of a "Federal contract priority" is a "novel legal theory." Doc. 38 at 11:2–3. It counters however, that the "intent and conduct of the parties during the planning, debate, implementation and operation of the CVP gives rise to an unmistakable inference that a priority did and does exist as between the contracting parties to water delivered by the CVP." *Id.* at 11:3–6. Del Puerto argues the conflict must be viewed by examining "the time the CVP was construct-

ed... when initial long-term water service contracts... were signed," in light of California's "first in time" water law. *Id.* at 11:8–12.

Del Puerto asserts the federal government evidenced its intent to follow state water priority rights law in its dealing with interim contracts in the Friant Unit and these actions support Del Puerto's "course of dealing" argument. Doc. 11:13–22 citing SWRCB D–935: "the United States proposes to dispose of this interim water by 6–year contractual arrangements with the foregoing applicants, with priority being determined by the date of application for water service" (Doc. 38 at 11:13–19). Del Puerto argues this statement demonstrates the Bureau recognized "contractual priorities ... from the beginning." *Id.* at 11:19–22. The federal government rejoins that discussions regarding interim water contractual arrangements are inadmissible as parole evidence and further that Del Puerto misleads by omitting relevant text of D–935: "the full text states: 'within the near future certain excess interim waters will be available *pending consummation of the total deliveries under long-term contracts.* The United States proposes to dispose of this interim water by 6–year contractual arrangements with the foregoing applications.' " Doc. 43 at 3:8–19 citing D–935 (emphasis added). As interim contracts for a short term (6 year) water supply, any such priority arrangement has no relevance or comparability to the prior or future long-term contracts to be negotiated. Doc. 43 at 33:15–28. Defendants contend there is no such thing as a "vested federal contract right[ ]." *Id.* at 4:10–17.

Del Puerto suggests *Westlands Water District,* 153 F.Supp.2d 1133 (E.D.Cal.

2001), recognizes the concept of "federal contract priority." *Id.* at 11:23–28,12:1–3. *Westlands Water District,* which dealt with water priority rights as between the Exchange Contractors and Westlands, which advanced a "no priority" pro rata theory of CVP water service entitlement among *all* CVP users, does not support Del Puerto's broad "federal contract priority" legal theory. The relationship between the Exchange Contractors and other CVP water users is unique and distinguishable from the relationship of all other CVP users inter se. The Exchange Contractors have priority water rights to CVP water under a specifically negotiated contract "in which Reclamation committed to provide 'substitute water' from the DMC in exchange for the Exchange Contractors' commitments not to divert water from the San Joaquin River pursuant to their senior water rights on that river, thereby allowing Reclamation to store water upstream in Millerton Lake behind Friant Dam." Doc. 28 at 2. Del Puerto and the remaining CVP contractors gave up no such senior riparian water rights, which facilitated creation of the CVP, which would justify a right to receive water from the Bureau on a priority basis. CVP contractors purchase *water service* under a standard government contract, the wording of which is similar in most cases. Doc. 44 at 3:22–24. The contractual relationship between the Exchange Contractors and the Bureau is not based on a *generalized "federal contract priority right,"* rather, their priority is case-specific.

Del Puerto contends federal defendants' broad discretion to control and maintain the CVP, under federal and state law,[10] should not be "confused" with the "acquisi-

---

**10.** *See* California Water Code § 8536 (West

2000): "The Board (SWRCB) has no power,

tion of water rights." Doc. 38 at 12:4–25 citing SWRCB D–990. Del Puerto argues its claim "is concerned with the allocation of water based on contractual priority within the CVP," not with the construction or maintenance of the CVP. Del Puerto misinterprets the term "maintenance." The Bureau's statutory mandate to "maintain" the CVP encompasses not only the physical release of water under contracts but also the allocation of water and the ability to negotiate and renegotiate CVP contracts as they expire. *See Westlands Water District,* 805 F.Supp. 1503, 1507 (1992), aff'd *Westlands Water District v. Firebaugh,* 10 F.3d 667 (9th Cir.1993). Del Puerto points to no law which limits the federal government's ability to negotiate terms of CVP water service contracts, or defines the term "maintain" as narrowly as does Del Puerto.

The now expired long-term contract between Del Puerto and the Bureau has no priority provision. Doc. 32 Exh. A. The water shortage apportionment clause is identical to Westlands Water District's clause and contains no discussion of contract-date-based priority of one CVP contractor over another CVP contractor.[11] Del Puerto's made-up term, "vested contract priority rights," (Doc. 38 at 13:5) is not a legally cognizable theory, it is unprecedented and unsupported by any existing statute, case or common law. That Del Puerto signed its now expired CVP water service contract prior to other San Luis Unit contractors creates no legally

jurisdiction, authority or control over the construction, operation or maintenance of the Central Valley Project or any part of it."

11. The 1953 Contract between Del Puerto and the Bureau states at ¶ 9(a):

There may occur at times a shortage during any year in the quantity of water available for furnishing to the district by the United States pursuant to this contract through and by means of the Project and in no event shall any liability accrue against the United States or any of its officers, agents, or employees for any damage, director or indirect, arising from a shortage on account of errors in operation, drought, or unavoidable causes. In any year in which there may occur shortage from any costs, the United States *reserves the right to apportion the available water supply among the District and others entitled, under existing and future contracts, to receive water from Mendota Pool and the Delta–Mendota Canal* in accordance with conclusive determination of the contracting officer as follows:

(i) a determination shall be made of the total amount of water agreed to be accepted during the respective year under all contracts than in force for the delivery of water from Mendota Pool and the Delta–Mendota Canal, the amount so determined being herein referred to as the contractual commitments.

(ii) a determination shall be made of the total quantity of water at Mendota Pool and from Delta Mendota Canal which is in excess of the amount necessary to meet the requirements of the contract of July 27, 1939, [Exchange Contract] refer to in (d) of this article and which is available for meeting the contractual commitments, the amount so determined being hereinafter referred to as the available supply.

(iii) the total quantity of water agreed to be accepted by the District during the respective year, under article 3 hereof, shall be divided by the contractual commitments, the quotient thus obtained being herein referred to as the District's contractual entitlement.

(iv) the available supply shall be multiplied by the District's contractual entitlement and the result shall be the quantity of water required to be delivered by the United States to the District for the respective year, but in no event shall such amount exceed the total quantity of water agreed to be accepted by the District pursuant to article 3 hereof.

Doc. 32 Exh. A at 11–12 (emphasis added).

enforceable priority right applicable to future contract negotiations between Del Puerto and the Bureau. Del Puerto has alleged no set of facts in support of this claim which would entitle them to relief. *See Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *see also Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 249 (9th Cir.1997).

It would be imprudent and would usurp the Executive's constitutional authority to contract, for a court to issue an advisory opinion as to a novel and previously unrecognized legal theory, which would then interfere with an Agency's contracting discretion in the allocation of federal resources.

### 2. *Del Puerto's Third Claim*

#### a. *Trust Theory*

██ Del Puerto claims it has appropriated water to beneficial use since 1950 and that "appropriation" gives it "first in time, first in right" priority under state water law. Federal defendants argue issue preclusion; they maintain plaintiff's claim has been made by other CVP users and rejected by both federal and state courts. Doc. 28 at 13. Defendants cite *Orff v. United States*, CV–F–93–5327:

> Plaintiffs contend under California law when an irrigator applies appropriated water to land, a vested water right is acquired to continue doing so; that federal reclamation law conforms to state law; and that they have acquired a 'right by use' that cannot be taken away.
>
> \* \* \* \* \* \*
>
> Plaintiffs' claim to appropriative water rights under [SWCRB decision] D–990 and D–1020 is misguided. These permits were issued to the federal govern-

ment, not to Plaintiffs. Plaintiffs' right to water is wholly dependent on their contract with the Bureau. State water law only takes precedence to the extent it is not inconsistent with federal law. 43 U.S.C. 383. . . . the United States is the permit owner of the state water rights at issue. The 'right by use' doctrine, even if applicable under state law, does not apply to federally-provided water, such as CVP water. *Israel v. Morton*, 549 F.2d 128, 132 (9th Cir.1977). That plaintiffs have 'beneficially used' CVP water does not give them appropriative rights in the water that transcend the water service contract terms \* \* \*. \* \* \* *Israel* holds no vesting of state law water rights is possible for federally-provided water.

Slip op. 46–48. *Westlands Water District* held:

> [t]he United States has acquired, by exchange, purchase, exercise of eminent domain, and appropriation, riparian and appropriative rights to all water within the CVP for administration as part of an integrated federal reclamation project. Access to CVP water is only by contract with the United States. *See, e.g.,* 43 U.S.C. 511 (2001). As the owner of CVP water rights, the United States has contractual authority and administrative discretion over how it provides water service among the CVP's water and power-users, and how it fixes priorities among them.

The Bureau owns all the state-law right to CVP water, which it uses to operate the CVP as an integrated unit. Parties who receive water do not file appropriation permits with the California DWR, as is normally required to perfect priority of the right to take water from a California water source, *see*

Cal. Water Code § 1450 (West 2000). Rather, the Bureau holds California water permits to all CVP water it delivers, pursuant to contracts with water districts and other CVP contractors. *See* 43 U.S.C. § 511 (2001).

Doc. 28 at 13 citing *Westlands Water District v. United States,* 153 F.Supp.2d at 1173.

Defendants cite state case law, *County of San Joaquin vs. State Water Resources Control Board,* 54 Cal.App.4th 1144, 63 Cal.Rptr.2d 277 (1997), which also rejects plaintiff's legal theory:

> The fact that the Bureau does not consume water is not synonymous with having no substantial interest in the water. *The Bureau has appropriative water rights in the Central Valley Project.* [citation omitted]. The Bureau owns the CVP facilities, has operational control and responsibilities relating to flood control, water supply, power generation and fish and wildlife mitigation. The Bureau has substantial property rights in its water rights permits, whereby the Bureau diverts public transports and stores water.

*Id.* at 1156 n. 12, 63 Cal.Rptr.2d 277 (emphasis added).

Del Puerto counters with SWRCB decision D–935, dated June 2, 1959, which allegedly establishes that CVP contractors, such as Del Puerto, *own* appropriative water rights under state law: "[p]ermits issued to the United States on these projects provided, in substance, that rights under the permits are to be held by the United States in trust for the water users, that rights acquired thereunder shall be permanent and appurtenant to the lands irrigated and that licenses shall be issued to the public agencies with [sic] such water

has been beneficially used." Doc. 38 at 13 citing D–935 at 90. Del Puerto proffers a trust theory and argues the Bureau, as trustee of the water user's rights, is a "regulator," not an appropriator. Doc. 38 at 13:23–28, 14:1–8 citing D–935: "the United States holds all water rights acquired for project purposes in trust for the project beneficiaries who by use of the water on the land will become the true owners of the perpetual right to continue such use." The SWRCB therefore allegedly retains jurisdiction over the water and the Bureau is merely responsible for "executing contracts and ensuring that" the water is put to beneficial use. *Id.* at 14. This theory turns federal reclamation law on its head and would vest ultimate authority to allocate federal water to the State and water users.

Del Puerto argues *Orff* does not apply because Del Puerto does not claim breach of contract or a violation of an environmental statute, as in *Orff.* Del Puerto contends that even if *Orff* were applicable, "the court ultimately held that the federal government had created neither an express nor an implied trust... the opinion fails to clearly differentiate between the concept of a 'trust'—as described in D–935—and the 'public trust' as decided in *National Audubon Society v. Superior Court of Alpine County,* 33 Cal.3d 419, 189 Cal.Rptr. 346, 658 P.2d 709 (1983)." Doc. 38 at 15. Del Puerto disagrees with *Orff* and argues no "public trust" exists, rather a direct "trust" relationship exists between the parties based on D–935, *i.e.* the Bureau holds its permits "in trust for the ultimate users" of CVP water, and the CVP water users acquire the appropriative use rights. Doc. 38 at 15–16. The United States, "in its role as trustee," is obligated "to apportion water in accordance with state law, and order of priority, so long as doing so

does not violate federal law or express congressional directive." Doc. 38 at 16:22–24. Del Puerto contends the language in *Orff,* which states that "no state law appropriative rights may ensue for the CVP water under any circumstances," is "extremely broad and proves too much." Doc. 38 at 16. Del Puerto impliedly argues that State Water Resources Control Board Decision 935, issued in 1959, takes precedence over District and Appellate court decisions as well as the later SWRCB Decision, limiting the trust theory. This attempt to reincarnate ancient history is incorrect and disingenuous, given the Ninth Circuit's express rejection of such a trust theory in *Israel v. Morton,* 549 F.2d 128, 132 (9th Cir.1977) and SWRCB's express rejection of the trust theory in D–1641, dated March 15, 2000.[12] As the government notes, the recognition of a purported "perpetual right" to CVP water service is a case of "the tail seeking to wag the dog."

### b. *Appropriative Water Rights Theory*

Del Puerto's First Amended Complaint claims a vested appropriative water right based on its "prior beneficial use" of CVP water, "DEL PUERTO has appropriated water to beneficial use since 1950, prior in time to the San Luis Unit contractors. Under State law, DEL PUERTO would have an absolute priority in time over any Junior appropriator(s)." Doc. 24 ¶ 39 at 10. Yet, Del Puerto's opposition brief argues it "does not need to assert an appropriative right to prove a contractual priority to water in the CVP." Doc. 38 at 15:4–6. It is unclear whether Del Puerto is abandoning its Third Claim, as it now states:

"Del Puerto does not assert an appropriative state water right—merely a contractual priority based on the date of beneficial use." Doc. 38 at 16:21–22.[13]

Del Puerto argues the initial *date* of Del Puerto's "beneficial use" of CVP water creates an "implied vested contractual priority," held in trust by the government, over all other CVP users. It contends the government must perpetually recognize such "vested priority" in a new long-term water service contract. Del Puerto contends the "Bureau's demands for unconditional permits" was rejected in SWRCB 990 and this represents the SWRCB's ultimate control over CVP water rights. Del Puerto knows very well that federal reclamation law takes precedence over conflicting state water law. Doc. 38 at 17:2–6, 19–22. 43 U.S.C. § 383; *see Natural Resources Defense Council v. Houston,* 146 F.3d 1118, 1132 (9th Cir.1998) (citing *California v. United States,* 438 U.S. 645, 650, 98 S.Ct. 2985, 57 L.Ed.2d 1018 (1978) " 'cooperative federalism' of § 8 require[s] the United States to comply with state water laws *unless such a law was directly inconsistent with clear congressional directives regarding the project."* (Emphasis added)); *see also U.S. v. State of Cal., State Water Resources Control Bd.,* 694 F.2d 1171, 1176 (9th Cir.1982).

Without citation of authority, Del Puerto asserts D–1020 supports its trust theory: "D–1020 reiterated the permit condition that the water rights were appurtenant to the land and continued in perpetuity." *Id.* at 17:22–24, no citation. Del Puerto proffers the legal conclusion that all parties involved in the permitting process, including the Bureau, "accepted and ceased to

---

**12.** *See* discussion, *infra,* at 47–50.

**13.** Despite Del Puerto's bizarre statement, the remainder of its brief advances an appropriative rights claim under a "trust" theory.

fight" over the water-rights trust issue. Doc. 38 at 17:24–27.

Del Puerto further contends the Bureau's "broad discretion" to manage the CVP is not the same discretion the SWRCB has to manage water rights. The Bureau, according to Del Puerto, is subject to the trust "conditions" listed in D–935 [14] until it challenges D–935; the Bureau's "hands are tied." This position is not tenable. In *Israel v. Morton*, the Ninth Circuit noted:

> A distinction must be recognized between the nature of non project water, such as natural-flow water, and project water, and between the manner in which rights to use of such water are obtained. Right to use of natural-flow water is obtained in accordance with state law. In most Western states it is obtained by appropriation putting the water to beneficial use upon lands. Once the rights are obtained they vest, until abandoned, as appurtenances of the land upon which the water has been put to use. *Project water, on the other hand, would not exist but for the fact that it has been developed by the United States. It is not there for the taking (by the land owner subject to state law), but for the giving by the United States. The terms upon which it can be put to use, and the manner in which rights to continued use can be acquired, are for the United States to fix.*

*Israel v. Morton*, 549 F.2d 128, 132–133 (9th Cir.1977).[15]

Federal defendants cite SWRCB D–1641, which rejects Del Puerto's trust theory and earlier SWRCB decisions:

> [t]he trustee status accorded to the USBR D–893 apparently is meant to place the USBR in the shoes of the State of California, which has statutory and common-law public trust responsibilities. These responsibilities are not the trust responsibilities of a fiduciary acting for the benefit of another, but are governmental responsibilities that include the ability to choose among actions to carry out a greater public benefit.
> \* \* \*
> Under *Israel v. Morton* \* \* \*, there can be no vesting of state law water rights by beneficial users of federally provided water. \* \* \* Finally, title to the water rights under the permits is held by the USBR, not by the contractors....
> ...even if water use is appurtenant to the enjoyment of a particular property, that does not mean the owner of that property is the water right holder....

---

**14.** Del Puerto cites D–935: "Permits issued to the United States on these projects provide, in substance, that rights under the permits are to be held by the United States in trust for the water users, and that rights acquired thereunder shall be permanent and appurtenant to the lands irrigated and that licenses shall be issued to the public agencies with such water has been beneficially used." Doc. 38 at 13:18–22 citing D–935 at 90.

**15.** The Ninth Circuit elaborates in a footnote: "as one writer has put it: 'the fact of importance above all others in federal reclamation is that the land owner calls upon the government to provide him with water. *It is for Congress representing the general interest, and not for the landowner, to say upon what terms, in what amount, and in accord with what policy the public will supply water.* This is the first principle inherent in a relationship between the public that gives and an individual who receives.'" *Israel v. Morton*, 549 F.2d at 133 n. 3 (emphasis added) citing Taylor, The Excess Land Law: Execution of a Public Policy, 64 Yale L.J. 477, 478 (1955); *also citing Ivanhoe Irrigation Dist. v. McCracken*, 357 U.S. 275, 294–97, 78 S.Ct. 1174, 2 L.Ed.2d 1313 (1958).

only water right holders are able to change their use of water. In this context, the permit term clearly contemplates that the USBR will be able to change its use of water under state law. This is a further affirmation that the USBR is the water right holder.

SWRCB D–1641, March, 2000 at 83–84 (emphasis added).

Federal defendants claim Del Puerto's suit and brief (at 15–18) challenges the *Orff* decision and judgment. Doc. 43 at 9. Defendants argue Del Puerto could have sought intervention in *Orff*, or sought to file an amicus brief at either the trial or appellate level, but did not and cannot now challenge that decision independently. *Id.* Del Puerto neither cites to, nor discusses the later authority, *Israel v. Morton*, nor SWRCB decision 1641.

Under the doctrine of res judicata, a prior adjudication may have two distinct types of preclusive effects: claim preclusion and issue preclusion.[16] "Res judicata," or claim preclusion, is defined in *McHenry v. Jordan*, 81 F.3d 169, 169 (9th Cir.1996):

> Res judicata ensures the finality of decisions. Under res judicata, 'a final judgment on the merits bars further claims by parties or their privies based on the same cause of action.' Res judicata prevents litigation of all grounds for, or defenses to, recovery that were previously available to the parties, regardless of whether they were asserted or determined in the prior proceeding. Res judicata thus encourages reliance on

judicial decisions, bars vexatious litigation, and frees the courts to resolve other disputes.

*McHenry v. Jordan*, 81 F.3d 169, 169 (9th Cir.1996) quoting *Brown v. Felsen*, 442 U.S. 127, 131, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979). Issue preclusion prevents relitigation of all "issues of fact or law that were actually litigated and necessarily decided" in a prior proceeding. *Villamar v. Hersh*, 37 Fed.Appx. 919, 2002 WL 1333030, *1 (9th Cir.2002) citing *Segal v. American Tel. & Tel. Co.*, 606 F.2d 842, 845 (9th Cir.1979). Issue preclusion applies if: (1) Del Puerto was afforded a full and fair opportunity to litigate the same issue in a prior action; (2) the issue was actually litigated and decided against Del Puerto in a final decision; and, (3) the issue was necessary to support the judgment. *Villamar*, 37 Fed.Appx. 919, 2002 WL 1333030 at *1 citing *Clark v. Bear Stearns & Co.*, 966 F.2d 1318, 1320 (9th Cir.1992); *see also Robi v. Five Platters, Inc.*, 838 F.2d 318, 322 (9th Cir.1988).

Del Puerto was not a party to, nor in privity with, the parties in either the *Westlands* or *Orff* suits. Neither claim nor issue preclusion apply. However, governing Ninth Circuit precedent, (*Israel v. Morton*) and the SWRCB's explicit rejection of such a trust theory in March 2000, establish as a matter of law that Del Puerto cannot state a trust claim upon which relief may be granted to a "vested priority" that could be created through a *water district's* beneficial use of *project water owned and provided by the United States government*. *Israel v. Morton*, 549 F.2d 128, 132–133 (9th Cir.1977).[17]

---

**16.** The Ninth Circuit and the U.S. Supreme Court have both noted a preference for the term "claim preclusion" instead of "merger," "bar," or "res judicata," and for the term "issue preclusion" instead of "collateral estoppel." *See Migra v. Warren City Sch. Dist.*

*Bd. of Educ.* 465 U.S. 75, 77 n. 1, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984); *Robi v. Five Platters*, 838 F.2d 318, 321 & n. 2 (9th Cir.1988); *Americana Fabrics v. L & L Textiles* 754 F.2d 1524, 1529 (9th Cir.1985).

## IV. CONCLUSION

Del Puerto's claims are not ripe for review. No final agency action has occurred. There is no immediate risk of harm. Plaintiff continues to negotiate a new contract with the Bureau, which will not be signed for another 12–18 months. An oral expression about negotiating posture is not a "final agency decision."

For the foregoing reasons:

1. Intervenors' (Westlands Water District/San Benito Water District and Santa Clara Water District) Motions to Dismiss all claims for Lack of Subject Matter Jurisdiction under 12(b)(1) are GRANTED.

2. Federal defendants' 12(b)(6) motion to dismiss for failure to state a claim is GRANTED.

SO ORDERED.

17. The same precedent applies to Del Puerto's contradictory theory that it is not Del Puerto's water use, but rather its contract date, which creates a vested state water right under the trust theory.